754 P.2d 542

**STATE of New Mexico,
Plaintiff–Appellant,**

v.

**Robert ANDERSON,
Defendant–Appellee.**

**No. 10433.**

Court of Appeals of New Mexico.

April 14, 1988.

Hal Stratton, Atty. Gen., Charles H. Rennick, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Nancy Hollander, Freedman, Boyd & Daniels, P.A., Albuquerque, for defendant-appellee.

## OPINION

BIVINS, Judge.

The state appeals from the order of the trial court granting defendant's motion to suppress the evidence against him. The trial court found and concluded that defendant's consent to search was not voluntary, and that the officers did not have probable cause to search or arrest defendant. The docketing statement challenged all three of these rulings. Our calendar notice proposed summary affirmance, and the state filed a memorandum in opposition to the proposed disposition. Not persuaded by the state's memorandum, we affirm the order of the trial court.

FACTS

On May 8, 1987, defendant was driving east on I–40 in Bernalillo County. Officer Garley, by use of a radar device, clocked defendant's car at 67 miles per hour in a 65–mile-per-hour zone. Garley stopped defendant to issue him a speeding ticket. After defendant pulled over, the officer asked him for his driver's license and vehicle registration. While defendant was looking for these items, Garley engaged him in conversation concerning his point of departure and point of destination. Defendant stated that he was on his way from Phoenix, Arizona, to Oklahoma City, Oklahoma. The information in defendant's driver's license and vehicle registration indicated that both were in proper order. The documents showed defendant was the sole owner of the car he was driving. The car was registered in Iowa, the license plates were from Iowa and defendant's driver's

license had an Iowa address. Defendant was dressed in clothes with Harley–Davidson motorcycle logos. He was alone in the car, had no luggage visible in the passenger compartment except a carry-on bag, and had slept at a rest area at some point during his travels. There was a box of Kentucky Fried Chicken on the car seat. Defendant had some difficulty finding his driver's license and appeared to be nervous.

At the hearing, Garley testified that the presence of the Kentucky Fried Chicken and the carry-on bag, the travel in an easterly direction, defendant's admission of having slept at a rest area, and defendant's nervousness made him feel that he had "a reasonable suspicion based on articulable facts" to believe that defendant was carrying drugs. According to the officer, this was based on the "drug courier profile" taught to him in a law enforcement class.

When defendant gave Garley his driver's license and vehicle registration, the officer had all the information he needed to issue a speeding ticket. After defendant presented his driver's license, the officer asked him if he was carrying any narcotics. Defendant answered in the negative. The officer asked if he could look in the trunk of the car, and defendant said "yes" and opened the trunk. Garley did not ask defendant whether he could do a thorough search, nor did he ask whether he could search or look inside bags or sacks in the trunk. He had consent to search forms but decided not to use them. Garley did not inform defendant he had the right to refuse him permission to look inside the trunk.

When he looked in the trunk, Garley saw some motor oil, a sleeping bag and an opaque white cloth bag. When asked what was inside the white bag, defendant said "laundry." Upon handling the bag, Garley felt something soft, like a plastic container. He then opened the bag and pulled out clear plastic bags containing a white substance inside and two plastic bottles marked "Inositol" wrapped in a white towel. The officer asked defendant about the white substance in the clear plastic bags, and defendant told him it was a food supplement used for diabetics. Garley smelled the powder in the bags and bottles and found it to be odorless.

Garley then placed defendant under arrest for possession of a controlled substance, read him his rights, took him to the patrol car, and then radioed a second officer to bring field test kits for narcotics to the scene. Garley and the second officer both thought the white powdered substance was cocaine. They ran two field tests on the white powder in the plastic bags to test for cocaine. Both tests were negative. Nevertheless, the officers took defendant to the state police office in Albuquerque and had a wrecker tow the car into Albuquerque. At the state police office, the white powder in the bags tested positive for methamphetamine. The white powder in the plastic bottles was in fact Inositol, a supplement for diabetics.

Issue 1  *The Validity of Defendant's Consent to Search*

■ The voluntariness of a consent to search is a factual question. *State v. Valencia Olaya,* 105 N.M. 690, 736 P.2d 495 (Ct.App.1987). The government has the burden of proving that a consent to search was given freely and voluntarily. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The determination of voluntariness involves a three-tiered analysis: (1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights. *United States v. Recalde,* 761 F.2d 1448, 1453 (10th Cir.1985); *State v. Cohen,* 103 N.M. 558, 711 P.2d 3 (1984), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1985); *State v. Valencia Olaya.* The question is whether, given the totality of the circumstances, the consent was voluntary. *Schneckloth v. Bustamonte.*

■ It is for the trial court to weigh the evidence, determine the credibility of witnesses and decide if the evidence is sufficient to clearly and convincingly establish

that the consent was voluntary. *State v. Valencia Olaya.* The appellate court reviews the evidence in the light most favorable to the trial court's decision and will uphold the decision if it is supported by substantial evidence. *Id.* The question is whether the trial court's result is supported by substantial evidence, not whether the trial court could have reached a different conclusion. *Bagwell v. Shady Grove Truck Stop*, 104 N.M. 14, 715 P.2d 462 (Ct.App.1986). The finding of facts frequently involves selecting which inferences to draw. *See, e.g., State v. Tovar*, 98 N.M. 655, 651 P.2d 1299 (1982). The possibility that on similar facts another trial court may have drawn different inferences and found the consent in this case voluntary does not mean that we must reverse here.

■ The state argues that the trial court's decision is not supported by substantial evidence. In regard to the first factor, the state argues that the testimony at the evidentiary hearing was that Garley asked defendant if he could look in the trunk of the car and defendant said that he could and opened the trunk. The trial court found that this was consent only to look into the trunk, not to search the items of luggage in the trunk. The state does not point to any evidence that would support a finding that defendant also consented to the search of the items in the trunk. *See State v. Sisneros*, 98 N.M. 201, 647 P.2d 403 (1982). Accordingly, the trial court's decision concerning this factor is supported by substantial evidence. *Cf. State v. Valencia Olaya* (evidence at suppression hearing supported a finding that police officer had the driver's unlimited consent to search the vehicle).

With regard to the second factor, the trial court found that defendant's consent to the search of the trunk was affected by the inherently coercive nature of the situation. The state concedes that Garley's testimony was identical to the officer's testimony in *State v. Ruud*, 90 N.M. 647, 567 P.2d 496 (Ct.App.1977), but argues that the case is distinguishable because the initial stop in *Ruud* was found to be illegal, and because the defendant in *Ruud* was fe-

male. Neither of these points is persuasive. As to the first, it is true that the stop in *Ruud* was illegal while the initial stop in this case was legal. However, we view the trial court's decision as incorporating a finding that the detention of defendant beyond what was necessary to issue a speeding ticket was unreasonable. Under these circumstances, the trial court's finding that the atmosphere was coercive must be sustained. *Cf. State v. Cohen* (detention of defendants held reasonable, because based on reasonable suspicion); *State v. Valencia Olaya* (where trial court found brief detention was reasonable, defendant's unlimited consent to search of vehicle was not tainted). Both *Ruud* and the present case involve detentions beyond what was permissible. As to the second point, we do not find the difference in stature and gender between the defendant in *Ruud* and defendant here to be a sufficient basis for distinguishing the holding in *Ruud*.

The state also argues that every traffic stop involves a detention and questioning and, thus, if the consent here can be considered in some way coerced, no consent would ever be voluntary. We doubt, however, that all traffic stops include detaining the suspect after the original purpose for the stop has been satisfied, as was the case here.

It is for the trial court to determine whether or not the consent was the product of free choice on the part of defendant. Where defendant was detained on the highway beyond the time necessary to fulfill the purpose of the original stop, questioned about his reasons for traveling and where he slept the night before, and gave only a verbal consent to a relatively limited search, the scope of which consent was then exceeded by the officer, we hold there is substantial evidence to support the trial court's decision that the consent to the search of the trunk was not voluntary.

## Issue 2 *Probable Cause to Search*

■ Whether probable cause exists presents a question of law. *State v. Marquez*, 103 N.M. 265, 705 P.2d 170 (Ct.App. 1985). Factual determinations, however,

must often be made before the legal question can be answered, and, when the evidence is conflicting, it is for the trial court to determine the facts. *Id.*

"Probable cause exists when the facts and circumstances within the officers [sic] knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed." *State v. Blea,* 88 N.M. 538, 540, 543 P.2d 831, 833 (Ct.App.1975).

▮ Relying on *State v. Cohen,* the state argues defendant had certain characteristics noted in the drug courier profile and this alone, or in combination with other facts, is sufficient to provide probable cause to search. The facts alleged to be part of the drug courier profile are that: defendant was traveling east; he had slept at a rest stop; he had no luggage visible in the car except a carry-on bag; he had a box of Kentucky Fried Chicken in the car with him; and he was nervous.

The trial court held, and we agree, that these facts are not sufficient in themselves to warrant a man of reasonable caution in believing that an offense, specifically drug smuggling, has been or is being committed. *See State v. Cohen; State v. Hilliard,* 81 N.M. 407, 467 P.2d 733 (Ct.App.1970). The facts relied on here are generally descriptive of hundreds of innocent persons traveling through New Mexico on the interstate every day.

In *State v. Cohen,* the facts alleged to fit the drug courier profile were quite different. The opinion recites those facts as follows: "(1) two persons appearing to be foreigners, (2) driving a rental car with Florida license plates, (3) across the country[,] (4) with a small amount of luggage, (5) and with a one-way car rental being paid for in cash." 103 N.M. at 559–560, 711 P.2d at 4–5.

The trial court in the case before us concluded:

Assuming that the drug courier profile expounded in Defendant's exhibit E would, in and of itself, provide reasonable suspicion to briefly detain an individual, all or a substantial number of the factors must be present in order to discern the "profile." The list of factors which make up the profile cannot be treated as a magical sort of potpourri from which officers may draw isolated, unrelated ingredients and create instant legal grounds to detain citizens traveling our highways. Defendant in this case does not fit the "profile" any more than any proverbial average man crossing New Mexico to and from out of state destinations by the thousands. The five profile factors slapped together by the officer in this case do nothing more than highlight the ordinary, rather than the sinister.

We agree with the trial court.

Finally, the state argues there was probable cause for the arrest of defendant. The first calendar notice proposed summary affirmance on this issue on the ground that the only additional facts bearing on this issue were all fruit of the poisonous tree. The memorandum in opposition does not point out any new facts or errors of law that would show the disposition proposed in the calendar notice was erroneous. *State v. Sisneros.* Thus, we affirm the trial court's ruling that there was no probable cause to arrest defendant.

*Motion to Amend the Docketing Statement*

The state has moved to amend the docketing statement to raise a new issue: the officer had a reasonable suspicion that the law was being violated. The state's argument, as we understand it, is that the same facts already discussed gave rise to a reasonable suspicion that drug smuggling was afoot, and this reasonable suspicion justified first the search of the trunk and then, when that turned up nothing suspicious, a search of the bags in the trunk. The state argues that even if the officer did not have probable cause to arrest or search the luggage in the trunk of the car, the facts did give the officer reasonable suspicion to inquire further. The motion to amend is denied because the issue sought to be raised is not well grounded in either the

facts or the law. *State v. Rael,* 100 N.M. 193, 668 P.2d 309 (Ct.App.1983).

Assuming, without deciding, that the facts in this case would give rise to a reasonable suspicion that the law was being violated, the law does not support the state's position. The cases relied on by the state establish only that a police officer may briefly detain a person for further inquiry even though the facts do not establish probable cause. *See State v. Cohen; State v. Hilliard.* They do not justify a search that was not consented to by defendant based on a showing of less than probable cause.

The state contends *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), allows an officer to investigate based on less than probable cause. In *Brignoni–Ponce,* the issue was whether border patrol officers could stop a vehicle and question the occupants concerning their citizenship and immigration status where the only ground for suspicion was the fact that the occupants of the car appeared to be of Mexican ancestry. *Brignoni–Ponce* held that when an officer's observations lead him to reasonably suspect that a particular vehicle may contain illegal aliens, he may stop and briefly investigate the circumstances that provoke suspicion. The stop and inquiry must be reasonably related in scope to the justification for their initiation. The opinion specifically notes that this meant, in the context of a border patrol investigation for illegal aliens, that the officers could ask questions concerning the citizenship and immigration status of the occupants of the car, and could ask for an explanation of suspicious circumstances, but that any further detention or search must be based on either consent or probable cause.

The state may have intended to argue under this issue that the detention was legal, because it was based on a reasonable suspicion. As indicated earlier, however, we view the trial court's ruling as holding that the detention was unreasonable. We also conclude that the finding is supported by substantial evidence.

The trial court's order suppressing the evidence is affirmed.

IT IS SO ORDERED.

MINZNER and APODACA, JJ., concur.