8 P.3d 154

2000-NMCA-069

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Arthur LOPEZ, Defendant–Appellant.**

No. 20,939.

Court of Appeals of New Mexico.

May 17, 2000.

Certiorari Denied, No. 26,417,
Aug. 9, 2000.

Patricia A. Madrid, Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Lisa N. Cassidy, Assistant Appellate Defender, Santa Fe, for Appellant.

*OPINION*

APODACA, Judge.

{1} Defendant appeals his convictions for aggravated battery and attempted murder. His sole issue on appeal is whether the trial court erred in refusing to suppress certain statements that he made to law enforcement officers. Our calendar notice proposed to affirm the trial court's decision. Defendant has filed a memorandum in opposition to our proposed disposition. Not persuaded by his arguments, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} Defendant was an inmate at the Corrections Corporation of American Facility in Estancia, New Mexico. On July 28, 1998, McArthur Cordova, another inmate, was stabbed repeatedly while asleep in his cell. After the stabbing, all the inmates residing in Cordova's cellblock, including Defendant, were locked down in their individual cells. They were ordered to remove their clothing for a visual check concerning signs of an altercation. Fresh marks and bruises were observed on Defendant's back. Defendant was handcuffed and taken to the office of Corrections Officer Juan Ibarra. Officer Ibarra closed the door to his office and began asking Defendant questions. Defendant was not given *Miranda* warnings before questioning. He was not told that his responses to the questions were completely voluntary and that he could leave at any time. Officer Ibarra testified that the purpose of his questions was to evaluate Defendant's involvement in the stabbing, if any, either as a victim or perpetrator. During the questioning, Defendant admitted to stabbing Cordova. He was then returned to lock-down status. Later that day, he was questioned by State Police officers after having been given *Miranda* warnings.

{3} Defendant moved to suppress both statements admitting his involvement in the stabbing. After a hearing, the trial court denied the motion. Defendant appeals that denial.

## II. DISCUSSION

### A. Standard of Review

{4} The standard of review on appeal from the denial of a suppression motion is whether the trial court correctly applied the law to the facts, viewed in the manner most favorable to the prevailing party. *State v. Boeglin*, 100 N.M. 127, 132, 666 P.2d 1274, 1279 (Ct.App.1983). The trial court's factual determinations are subject to a substantial evidence review, but its application of the law to the facts is subject to a de novo review. *State v. Attaway*, 117 N.M. 141, 145, 870 P.2d 103, 107 (1994).

### B. Denial of Suppression Motion

{5} *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), provides that prosecutors may not use statements made during custodial interrogation of a suspect unless the prosecution demonstrates that the suspect was adequately advised of his rights. *See State v. Juarez*, 120 N.M. 499, 502, 903 P.2d 241, 244 (Ct.App. 1995) (discussing *Miranda* requirements). Custodial interrogation involves "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any

significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. Whether a person is in custody under the holding in *Miranda* depends on whether there has been such a restriction on the person's freedom as to render him not free to leave. *State v. Munoz*, 1998–NMSC–048, ¶ 40, 126 N.M. 535, 972 P.2d 847.

■ {6} Defendant argues that, because it is axiomatic that an inmate is not "free to leave" any interrogation, every interrogation of an inmate must be preceded by *Miranda* warnings. In so arguing, Defendant relies on *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). We believe there is nothing in *Mathis* suggesting that an inmate is automatically entitled to *Miranda* warnings every time he is questioned by a prison official by virtue of his prisoner status. *See United States v. Conley*, 779 F.2d 970, 972–73 (4th Cir.1985); *cf. Illinois v. Perkins*, 496 U.S. 292, 299, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990).

■ {7} We agree with the many courts recognizing that the traditional analysis for determining whether a person is in custody under the holding in *Miranda* cannot be applied where the suspect is already incarcerated for a different crime. We believe that whether an inmate is subjected to custodial interrogation depends on whether he has been subjected to additional restraints on his freedom of movement than is customary. *See Conley*, 779 F.2d at 973; *Cervantes v. Walker*, 589 F.2d 424, 428 (9th Cir.1978). In making that determination, we must look to the totality of the circumstances surrounding the interrogation. *Garcia v. Singletary*, 13 F.3d 1487, 1492 (11th Cir.1994); *Commonwealth v. Larkin*, 429 Mass. 426, 708 N.E.2d 674, 681 (1999). We are concerned with the suspect's subjective belief that his freedom of action is curtailed to a degree associated with formal arrest and whether the belief is objectively reasonable under the circumstances. *U.S. v. Chamberlain*, 163 F.3d 499, 503 (8th Cir.1998).

■ {8} Some courts have listed a number of factors to be considered, including (1) the language used to summon the individual; (2) the physical surroundings of the interrogation; (3) the extent to which the suspect is confronted with evidence of his guilt; and (4) any additional pressure exerted to detain the suspect. *Cervantes*, 589 F.2d at 428; *People v. Denison*, 918 P.2d 1114, 1116 (Colo.1996) (en banc). No one factor is dispositive. However, in every case, the question is whether the circumstances suggest any measure of compulsion above and beyond the confinement.

{9} Here, the trial court found that the surroundings in which the questioning took place was unexceptional, that Officer Ibarra made no effort to confront Defendant with evidence of guilt, and that no "strong-arm" tactics were used against Defendant. The trial court determined that the evidence did not support a finding of custodial interrogation. Defendant argues otherwise.

■ {10} Defendant contends that the fact that he was handcuffed is key to a determination that he was subjected to added restraints. The cases he relies on do not support that argument. In *United States v. Vasquez*, 889 F.Supp. 171 (M.D.Pa.1995), the defendant was taken into custody and handcuffed as a suspect. *Id.* at 175. Here, Defendant was handcuffed during his transportation to Officer Ibarra's office and remained handcuffed while outside his cell. There was testimony that such handcuffing was customary for safety purposes. Where such restraint is customary, it cannot be deemed a restraint requiring *Miranda* warnings because in that context the restraint does not add any appreciable measure of pressure or coercion beyond the usual prison environment. *See Conley*, 779 F.2d at 973–74 (handcuffs were standard procedure for transporting inmates).

■ {11} Defendant contends that his movement to Officer Ibarra's office was evidence of further restraint. We disagree. He was not placed in an interrogation room or segregated area but was taken instead to an office that was large, comfortable, and had windows into the main corridor of the facility. Although it is true that the door to the office was closed, we do not believe that Defendant's movement to the office was evidence of further restraint subjecting the inmate to such coercion as to render his statements

suspect and unfair under the circumstances. *See Conley*, 779 F.2d at 973–74 (defendant handcuffed and moved to conference room); *Larkin*, 708 N.E.2d at 681 n. 6 (if anything, movement from cell block to more open part of facility increases defendant's sense of freedom of movement).

 {12} Defendant argues that he was not informed he was free to leave or refuse to answer questions. We agree that this is a matter that can be considered in determining restraint. *Chamberlain*, 163 F.3d at 503; *Larkin*, 708 N.E.2d at 680–81. Although Defendant was not told that he was free to leave or to refuse answering questions, he was not yet a suspect, according to the evidence, and he was not treated as a suspect or told he was a suspect in an effort to intimidate him. Rather, the questioning was for the purpose of determining whether Defendant was the victim or the perpetrator. Additionally, there was testimony that Defendant and Officer Ibarra enjoyed a good relationship. There were no threats made to Defendant. There was evidence from which the trial court could rationally conclude that the atmosphere in which the questioning took place was not dominated by the officer to such an extent so as to overcome Defendant's free will and give him no choice but to submit.

{13} Finally, Defendant contends that the strip search and lock-down were further evidence of restraint. Both the strip search and the lock-down were restraints placed on all the inmates in the cellblock. Consequently, neither of these procedures was an uncustomary restraint placed on Defendant. Because the lock-down and strip search were customary practices when the stabbing of an inmate occurred, we conclude that such practices did not provide evidence of additional pressure upon Defendant of a kind and intensity that, taken in context, would render subsequent statements the product of unfair coercion. For that reason, we hold that his statements were not coerced by these restrictions. *See Chamberlain*, 163 F.3d at 503.

{14} Considering the totality of the circumstances surrounding the giving of Defendant's statement to Officer Ibarra, we agree with the trial court that there was no custodial interrogation under which *Miranda* warnings were required. Because the statements made to Officer Ibarra did not require *Miranda* warnings, the later statements to Officer Ness were not tainted and thus did not require suppression.

## III. CONCLUSION

{15} For these reasons, we affirm.

{16} **IT IS SO ORDERED.**

ALARID and BOSSON, JJ., concur.