187 P.3d 696 (2008)
2008-NMCA-090
STATE of New Mexico, Plaintiff-Appellee,
v.
Daniel MUÑOZ, Defendant-Appellant.
No. 26,956.
Court of Appeals of New Mexico.
May 21, 2008.
Certiorari Granted June 27, 2008.
*698 Gary K. King, Attorney General, Santa Fe, NM, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellee.
John Bigelow, Chief Public Defender, Joseph P. Walsh, Assistant Appellate Defender, Santa Fe, NM, for Appellant.
Certiorari Granted, No. 31,151, June 27, 2008.

OPINION
WECHSLER, Judge.
{1} The central issue in this appeal is whether Defendant Daniel Muñoz, a passenger on a bus, was subjected to an unlawful search that was not performed with his valid consent. During an inspection of the cargo of the bus at a checkpoint, a trained dog alerted to a bag that was ultimately linked to Defendant. Law enforcement agents subsequently questioned Defendant, asking him to empty his pockets and remove his shoes. We affirm the district court's findings that (1) Defendant was not in custody at the time of the agents' questioning so as to invoke Defendant's rights under the Fifth Amendment to the United States Constitution and (2) Defendant voluntarily responded to the agents' requests. We further hold that Defendant did not preserve the arguments that he raises on appeal concerning alleged violations of the New Mexico Constitution. We affirm.
*699 FACTUAL AND PROCEDURAL BACKGROUND
{2} Defendant entered a conditional plea of no contest after his trial resulted in a mistrial and the district court granted the State's motion for reconsideration of its previous order suppressing evidence. At the trial, the State presented the testimony of Agents Douglas Kubos and Carlos Medina of the United States Border Patrol. Agent Kubos testified that he was assigned to the Highway 54 checkpoint on May 11, 2005. Defendant was a passenger on a bus operated by a commercial bus line. As part of a systematic search at the checkpoint, Agent Kubos inspected the cargo area of the bus with a dog trained to detect odors. The dog alerted to a black duffel bag marked with a tag number. Agents went through the aisle of the bus asking if the bag belonged to anyone on the bus. When no one claimed the bag, they considered it abandoned and opened it. They found fifteen "little wrapped bundles" consistent with narcotics smuggling. Field testing indicated that the bundles contained marijuana. A forensic scientist testified to confirm the content of the bundles.
{3} Agent Medina testified that the bus company maintained a list matching ticket stubs with passenger seat numbers and that Defendant was seated in seat number 33, which was the seat that matched the ticket stub for the black duffel bag. He then testified that Defendant was therefore detained for further investigation and asked to empty his pockets and take off his shoes for safety reasons. Subsequently, outside the presence of the jury, Defendant's counsel argued to the district court that after the agents' request, the agents seized the ticket stub corresponding to the black duffel bag that Defendant produced from his shoe, the agents arrested Defendant, and Defendant gave a statement. In response, the district court ruled that the search that led to Defendant's production of the ticket stub was illegal and suppressed Defendant's statement. Because there was concern that there had been testimony about Defendant's statement, the district court also declared a mistrial.
{4} About a month later, the State filed a motion asking the district court to reconsider its suppression order. The State asserted that although Agent Medina stated that he asked Defendant to empty his pockets and remove his shoes for safety purposes, he could not remember the reason for the request and was only guessing. According to the State, the arresting agent was Hugo Gonzales, who was unavailable for trial because "he had changed jobs and moved."
{5} The district court held a hearing on the State's motion at which Agent Gonzales testified. He testified that Defendant was the only passenger who did not present a baggage ticket stub. When he questioned Defendant on the bus, Defendant was sweating profusely, shied away from him, and gave evasive answers. Based on the information connecting the duffel bag to Defendant's seat and Defendant's demeanor, Agent Gonzales asked him to step off the bus in order to be able to speak with him more privately. Once off the bus, Agent Gonzales told Defendant the facts that he had learned. He testified that Defendant "looked down" and "looked defeated" in reaction. Specifically, he stated, "[Defendant] just looked down, dropped his shoulders, his head went down to the ground." At that point, Agent Gonzales asked Defendant, "Would you pleasewould you empty out your pockets for us?" Defendant complied, and Agent Gonzales then asked Defendant "if he would remove his shoes." When he did, the ticket stub came out of one of his shoes. Agent Gonzales testified that he did not order Defendant to take any action and that Defendant's actions were voluntary. He testified that if Defendant had refused to comply with the request, he would have sought a search warrant. After he found the ticket stub and again confronted Defendant with the facts, Defendant admitted that the drugs were his.
{6} Ultimately, the district court ruled that (1) the stop and inspection of the bus were free from impropriety, (2) the agents' focus on Defendant was reasonable, (3) the detention was reasonable and supported by probable cause, and (4) Defendant was free to leave during the questioning. As to the search and statements, the district court found that Defendant's actions when he emptied his pockets and removed his shoes were *700 voluntary and that the statements that he subsequently made were not connected to an illegal search.
LAWFULNESS OF THE SEARCH
{7} Defendant argues on appeal that the agents engaged in an unlawful search in violation of the Fourth Amendment to the United States Constitution that resulted in the agents obtaining the baggage ticket stub and ultimately Defendant's admission of guilt. According to Defendant, the agents subjected him to an unlawful custodial interrogation because they did not advise him of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). As a consequence of this Fifth Amendment violation, Defendant argues that "any alleged consent given following the custodial interrogation was tainted." Alternatively, Defendant contends that his Fourth Amendment rights were violated because the evidence does not support the district court's finding that he consented to the search of his person.
Interrogation by Agents
{8} With regard to the agents' interrogation, Defendant asserts that he was in custody from the time that Agent Gonzales approached him while he was seated on the bus, stood over him, blocked him in his seat, and confronted him with the facts as Agent Gonzales understood them. He further contends that he was in custody when the agents asked him to leave the bus for further questioning. At the very least, Defendant asserts that he was in custody when, outside the bus, Agent Gonzales "told" him to empty his pockets and take off his shoes. Because the agents did not advise Defendant of his Miranda rights until they subsequently took him "into the checkpoint," Defendant claims that the entire encounter was tainted, requiring suppression of the baggage ticket stub and his subsequent confession.
{9} Defendant's Fifth Amendment argument raises a mixed question of law and fact. State v. Javier M., 2001-NMSC-030, ¶ 17, 131 N.M. 1, 33 P.3d 1. We review the district court's factual determinations for substantial evidence and its application of the law to the facts under the de novo standard of review. State v. Munoz, 1998-NMSC-048, ¶ 39, 126 N.M. 535, 972 P.2d 847.
{10} Under Miranda, law enforcement officers must warn a person who is subjected to a custodial interrogation of his or her right against self-incrimination protected by the Fifth Amendment and extended to the states through the Fourteenth Amendment. See Miranda, 384 U.S. at 444, 86 S.Ct. 1602. A person is considered to be in custody if he or she is under formal arrest or if an officer restrains the person's freedom of movement to the "degree associated with a formal arrest." Yarborough v. Alvarado, 541 U.S. 652, 663, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) (internal quotation marks and citation omitted). The test is an objective one, depending on "how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action." Id. (internal quotation marks and citation omitted). However, based on Fourth Amendment principles, officers may seize an individual upon reasonable suspicion of criminal activity to conduct an investigatory inquiry without giving rise to the individual's Fifth Amendment protections. See Berkemer v. McCarty, 468 U.S. 420, 439-40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (explaining that an officer may make a traffic stop and question the driver without giving Miranda warnings). Nevertheless, an officer may not restrain a suspect's freedom of movement in such an investigatory detention without first reading the suspect his or her Miranda warnings before questioning commences if the restriction on the suspect's movement is comparable to the "degree associated with a formal arrest." State v. Wilson, 2007-NMCA-111, ¶¶ 20-21, 142 N.M. 737, 169 P.3d 1184 (internal quotation marks and citation omitted), cert. denied, 2007-NMCERT-008, 142 N.M. 435, 166 P.3d 1089.
{11} We look to the totality of the circumstances in order to ascertain whether an interrogation is objectively custodial. See State v. Lopez, 2000-NMCA-069, ¶ 7, 129 N.M. 352, 8 P.3d 154. By way of example, our Supreme Court in Munoz referenced numerous considerations that bear on the restraint on a suspect's freedom of movement, including (1) "the purpose, place, and *701 length of [the] interrogation"; (2) "the extent to which the defendant is confronted with evidence of guilt"; (3) "the physical surroundings"; (4) "the duration of the detention"; and (5) "the degree of pressure applied." Munoz, 1998-NMSC-048, ¶ 40, 126 N.M. 535, 972 P.2d 847 (internal quotation marks and citation omitted); see also Javier M., 2001-NMSC-030, ¶ 18, 131 N.M. 1, 33 P.3d 1 (recognizing isolation as a factor in determining whether Fifth Amendment protections are implicated). When we analyze the totality of the facts of this case, we conclude that Defendant was not in the agents' custody.
{12} We first note the two United States Supreme Court cases that involved police encounters with passengers on buses in order to point out what is not involved in this case. In Florida v. Bostick, 501 U.S. 429, 431-32, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), officers boarded a bus at a stopover and asked the defendant for permission to search his luggage. They advised the defendant that he had the right to refuse consent. Id. at 432, 111 S.Ct. 2382. The Supreme Court held that the circumstances of the questioning in the confines of the bus did not remove the case from the general rule that law enforcement officers may generally ask questions of an individual in a public place, even without any reasonable suspicion of criminal activity, provided that they "do not convey a message that compliance with their requests is required." Id. at 435, 111 S.Ct. 2382. According to the Court, the relevant factor was not the confining setting of the bus; rather, it was whether the officers acted in a coercive manner. Id. at 435-36, 111 S.Ct. 2382. The question was "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." Id. at 436, 111 S.Ct. 2382.
{13} In United States v. Drayton, 536 U.S. 194, 197-98, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002), police officers boarded a bus at a scheduled stop, and one spoke with the passengers. The officer first asked the defendants if he could check their bag. Id. at 199, 122 S.Ct. 2105. After searching the bag and finding no contraband, the officer asked for permission to check their "`person.'" Id. Those searches revealed that the defendants were carrying illegal drugs concealed beneath their clothing. Id. Ultimately, the United States Supreme Court held that the encounter was neither coercive nor confrontational. Id. at 204, 122 S.Ct. 2105. In so concluding, it stated, "The fact that an encounter takes place on a bus does not on its own transform standard police questioning of citizens into an illegal seizure." Id. As to the nature of a crowded bus, it noted that "because many fellow passengers are present to witness officers' conduct, a reasonable person may feel even more secure in his or her decision not to cooperate with police on a bus than in other circumstances." Id.
{14} The notable difference between Bostick and Drayton and this case is that in this case, the agents had reasonable suspicion that the bag that contained drugs belonged to Defendant before they questioned him in the bus. Defendant did not argue in the district court, and does not argue on appeal, that the agents' search of his duffel bag was improper. As a result of that uncontested search, the agents discovered the bundles of marijuana and found out that Defendant's seat number matched the ticket stub for the bag. Thus, for Fourth Amendment purposes, the agents were entitled to detain Defendant to question him as part of their investigation. See State v. Gutierrez, 2007-NMSC-033, ¶ 29, 142 N.M. 1, 162 P.3d 156 (explaining that it is permissible under the Fourth Amendment for a law enforcement officer who has reasonable suspicion that a crime has been committed to temporarily seize a suspect for the purpose of questioning). The officers in Bostick and Drayton did not have such right to effect a seizure.
{15} Nor does the testimony indicate that the agents had Defendant in custody while they were on the bus. Defendant was not isolated; instead, he was in a bus full of other passengers. Agent Gonzales asked Defendant if he could produce a baggage ticket stub, and when Defendant said that he could not, he told Defendant that the agents had information that the person sitting in seat 33 owned the bag in question. Although Agent Gonzales testified that Defendant was not "necessarily" free to leave, as we have *702 stated, Agent Gonzales had reasonable suspicion to detain Defendant at that time.
{16} The testimony also does not reflect a custodial setting when Agent Gonzales asked Defendant to leave the bus. Agent Gonzales testified that during his conversation with Defendant on the bus, he observed Defendant sweating profusely, shying away from him, and being evasive. He then asked Defendant to step outside the bus so that he could speak with him more freely and privately. In State v. McNeal, 2008-NMCA-004, ¶¶ 6, 10, 143 N.M. 239, 175 P.3d 333, we held that the defendant was not entitled to Miranda warnings when law enforcement agents asked him to exit a bus after they had connected him to a bag containing illegal drugs. Although the agents in this case may have seized Defendant with their exercise of authority, we see no basis to conclude that Defendant was in custody so as to require the agents to give him Miranda warnings. See id. ¶ 10 ("Although a person is seized for Fourth Amendment purposes whenever an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen, not all Fourth Amendment seizures rise to the level of `custody' for Fifth Amendment purposes.") (internal quotation marks and citation omitted).
{17} Outside the bus, Agent Gonzales had the right to detain Defendant to continue the investigation because he had reasonable suspicion that Defendant may have been violating a law. See Javier M., 2001-NMSC-030, ¶ 19, 131 N.M. 1, 33 P.3d 1. In order to investigate, it was permissible for Agent Gonzales to ask Defendant a "moderate number of questions" as part of his investigation. Id. As explained by our Supreme Court, this type of investigatory detention is permitted by the Fourth Amendment and does not trigger Fifth Amendment protections because the person being detained "is not obliged to respond." Id. If, on the other hand, the "atmosphere surrounding" such an investigatory detention is "so inherently coercive that the detainee feels compelled to speak," it must be considered custodial, thereby implicating the Fifth Amendment's privilege against self-incrimination. Id. Without citation to the record, Defendant contends that such a coercive atmosphere existed outside the bus because, "[w]ith his back to the bus immediately upon exiting," Defendant was "literally surrounded" by a "cadre of agents. . . . [who] he considered antagonistic." But the record does not support these assertions. Agent Gonzales presented the only testimony about the questioning. He testified on cross-examination that although other agents were part of the investigation, only one other agent was in close proximity to Defendant while he was being questioned. Additionally, there was no testimony about Defendant's position in relation to the bus.
{18} In Javier M., our Supreme Court addressed circumstances that were similar to the ones in this case. In that case, police officers investigating a noise complaint encountered a juvenile in an apartment. Id. ¶¶ 2-3. Smelling alcohol on the juvenile's breath or clothing, one of the officers asked him to step outside, where he was questioned. Id. ¶ 3, 33 P.3d 1. The officer testified that the juvenile was not free to leave. Id. ¶ 4, 33 P.3d 1. The Court held that although the juvenile was issued a citation during the detention, the detention was not custodial because it was "temporary, non-coercive, and public." Id. ¶ 20, 33 P.3d 1. In addition, although there were more officers in the apartment, only one officer conducted the questioning, and there was no indication that the juvenile was "overpowered by police presence." Id. ¶ 21, 33 P.3d 1. Similarly, in this case, the detention was temporary. Only Agent Gonzales and another agent were with Defendant during Agent Gonzales' questioning, and the questioning occurred in a public place. Nothing in the testimony suggests that the detention was coercive or that Defendant was overpowered by the agents. A reasonable person in Defendant's position would not have believed that he or she was subjected to the constraints of a formal arrest. Under these circumstances, Agent Gonzales was not required to give Defendant any Miranda warnings before questioning him.
Voluntariness of Consent to Search
{19} With regard to Defendant's Fourth Amendment arguments, we address *703 his contention that he did not voluntarily consent to the search of his person. The State had the burden of proving Defendant's voluntary consent based on the totality of the circumstances. State v. Paul T., 1999-NMSC-037, ¶ 28, 128 N.M. 360, 993 P.2d 74. The issue is a factual one that we review for substantial evidence. Id. In determining whether consent was voluntary, we utilize a "three-tiered analysis" that includes the following factors: "(1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights." State v. Anderson, 107 N.M. 165, 167, 754 P.2d 542, 544 (Ct.App. 1988).
{20} Our analysis of these factors indicates that there is substantial evidence to support the district court's determination. The first factor is met by the clarity of the request and the response. Agent Gonzales expressly asked Defendant if he would empty his pockets and remove his shoes. Defendant complied with both requests, and the evidence shows that his consent was specific and unequivocal. The evidence also supports the second factorthe absence of duress or coercion. Agent Gonzales testified that he asked Defendant, "Would you pleasewould you empty out your pockets for us?" After Defendant complied, he asked Defendant "if he would remove his shoes." Agent Gonzales made requests; he did not give orders or directives. As we have discussed, there was no testimony, as Defendant argues without citation to the record, that agents surrounded Defendant outside the bus. Contrary to Defendant's argument that Defendant believed that he had no choice but to acquiesce, the evidence indicates that Defendant acted voluntarily in response to Agent Gonzales' requests.
{21} Defendant also argues that State v. Villanueva, 110 N.M. 359, 796 P.2d 252 (Ct. App.1990) requires reversal in this case because it is "a case with facts almost identical to these in the present case." In Villanueva, border patrol agents used a trained dog to check the luggage compartment of a bus at a checkpoint. Id. at 360, 796 P.2d at 253. The dog alerted to two pieces of luggage, and the bus driver identified the bags in question as belonging to the defendant. Id. The defendant denied having any bags on the bus, and the agents asked him to step off the bus into the checkpoint trailer in order to talk to him. Id. In the trailer, the agents asked the defendant to empty his pockets and then told him to remove his shoes. Id. The defendant took off one shoe and was directed to take off the other. Id. at 360-61, 796 P.2d at 253-54. When he reluctantly complied, baggage tickets fell from his shoe. Id. This Court affirmed the district court's suppression of the evidence, concluding that the district court could reasonably have found that the defendant's consent was involuntary. Id. at 364, 796 P.2d at 257.
{22} Although similar in its factual setting, Villanueva is different from this case in two significant ways. First, the agents brought the defendant to the checkpoint trailer for questioning, a setting more confining than the outside of the bus. See id. at 360, 796 P.2d at 253. Second, an agent initially told the defendant to take off his shoes and then specifically directed him to take off the second shoe. Id. at 360-61, 796 P.2d at 253-54. These actions were more coercive than the requests made of Defendant by Agent Gonzales. Accordingly, Villanueva does not control our decision in this case.
ARGUMENTS UNDER THE NEW MEXICO CONSTITUTION
{23} Defendant also argues on appeal that "[t]he practice of bus interdiction often involves situations that amount to custodial interrogation" of bus passengers that requires law enforcement officers to inform passengers "that they have a right to not cooperate" with the officers. Defendant acknowledges that the United States Supreme Court specifically rejected such an argument in Drayton, 536 U.S. at 203, 122 S.Ct. 2105. He contends, however, that we should interpret the New Mexico Constitution to reflect such a right.
{24} The State counters that Defendant did not argue this issue in the district court, and, by virtue of the preservation requirements of Rule 12-216(A) NMRA as interpreted *704 in State v. Gomez, 1997-NMSC-006, ¶ 23, 122 N.M. 777, 932 P.2d 1, Defendant may not raise the issue for the first time on appeal. Gomez, in explaining the interstitial approach for preserving state constitutional arguments, differentiates between circumstances in which New Mexico case law construes the New Mexico Constitution more broadly than the United States Constitution and circumstances in which it does not. Id. ¶ 22. Without precedent construing the New Mexico Constitution more broadly than the Federal Constitution, Gomez requires a defendant wishing to assert a state constitutional right to argue in the district court "that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart and provide reasons for interpreting the state provision differently." Id. ¶ 23 (emphasis omitted).
{25} Defendant does not argue that any New Mexico case law currently construes the New Mexico Constitution more broadly than the Federal Constitution with respect to Defendant's issue. Nor does he argue that he specifically followed the dictates of Gomez before the district court. He does contend, however, that he nonetheless adequately preserved the argument that he makes on appeal. According to Defendant, his trial counsel "articulated the reasons for departing from federal precedent, but did not claim the New Mexico Constitution provides greater protection than its federal counterpart." Thus, Defendant argues that the district court was adequately alerted to the nature of the claimed error and was therefore able to issue an intelligent ruling.
{26} At the motion hearing, Defendant's counsel argued, "Your honor, I would submit that the claim that [Defendant] was not in custody and did not have to respond to [Agent Gonzales] is based on the legal fiction as a practical matter out on the roadway, and I think [the Affsprung case] addressed it in connection with motorists." Defendant's counsel was referring to State v. Affsprung, 2004-NMCA-038, ¶¶ 15, 18, 135 N.M. 306, 87 P.3d 1088, in which this Court held that a passenger in a motor vehicle is seized under the Fourth Amendment when an officer stops a vehicle for a traffic violation and subsequently requests and obtains the passenger's identification card. Defendant's counsel argued that, by analogy to Affsprung, Defendant was seized and that Agent Gonzales was therefore required to give him Miranda warnings. Defendant's counsel then argued that Defendant "was in custody at least from the moment he was asked to step out of his seat and exit the bus. There is Agent Gonzale[s] there, there's at least one other agent that's around him, and he's questioned, he's not Mirandized andso, I think, that there's an additional Miranda issue here as well."
{27} Defendant has entirely failed to preserve the issue under Gomez. He did not argue to the district court that the state constitution provides greater protection than the Federal Constitution and did not state any reason why it should. See Gomez, 1997-NMSC-006, ¶ 23, 122 N.M. 777, 932 P.2d 1. He failed to even mention the New Mexico Constitution. Affsprung relies on the Fourth Amendment, not the New Mexico Constitution. See Affsprung, 2004-NMCA-038, ¶ 18, 135 N.M. 306, 87 P.3d 1088. If Defendant is arguing on appeal that his trial counsel's mention of "an additional Miranda issue" in the context of his arguments below raised a separate state constitutional argument that the agents were obligated to inform him that he had a right not to cooperate with them, his argument is an unreasonable stretch of the district court record.
{28} Defendant additionally argues that because he has raised an issue of a fundamental right, this Court should not apply the preservation restrictions of Gomez and Rule 12-216(A). Rule 12-216(B)(2) allows this Court discretion to entertain unpreserved issues involving the fundamental rights of a party. We decline to exercise such discretion. Defendant had the opportunity to invoke complete scrutiny of the issue in the district court. If he had done so, the parties would have had the ability to fully develop the facts and argue the law on the issue, and the district court would have been able to make a decision with a sufficient record before it. See State v. Pacheco, 2007-NMSC-009, ¶ 10, 141 N.M. 340, 155 P.3d 745 (explaining that fundamental rights "may be *705 waived or lost" and concluding that the defendant waived his right to argue his fundamental right to a trial by a fair and impartial jury by "failing to timely invoke the ruling of the trial court").
{29} As a final argument, Defendant asserts that the Gomez preservation requirement of a state constitutional claim is an unconstitutional requirement under Article II, Section 18 of the New Mexico Constitution because it deprives a criminal defendant of equal protection under the law. Defendant contends that the requirement creates a class of similarly situated defendants who are treated dissimilarly. He contends that criminal defendants are a similarly situated group whose trial counsel develop the facts necessary to allow appellate courts to rule based on either the federal or state constitution but are treated differently, as two classes, depending on whether their trial counsel conformed to the strict requirements of Gomez. However, as we recently stated in State v. Garcia, 2008-NMCA-044, ¶ 30, 143 N.M. 765, 182 P.3d 146, cert. granted, 2008-NMCERT-003, 143 N.M. 682, 180 P.3d 1181, this argument "is inherently flawed."
{30} Indeed, to support his equal protection claim under both the constitutions of the United States and New Mexico, Defendant must demonstrate that the preservation requirement "draws classifications that discriminate against a group of persons to which [he] belongs." Id. ¶ 30 (alteration in original) (internal quotation marks and citation omitted). But, as we stated in Garcia, "[t]he class of individuals to which [Rule 12-216(A)] applies includes all appellants before the appellate courts. Every litigant must properly preserve an error in the trial court to assert it on appeal. Rule 12-216(A) treats all individuals in this class alike." Garcia, 2008-NMCA-044, ¶ 31, 143 N.M. 765, 182 P.3d 146. Thus, there is no discriminatory classification that triggers an equal protection claim. Id.
CONCLUSION
{31} We affirm the district court's order denying Defendant's motion to suppress.
{32} IT IS SO ORDERED.
WE CONCUR: MICHAEL D. BUSTAMANTE and CYNTHIA A. FRY, Judges.