This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                **NO. 30,293**

**MARCUS CISNEROS,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles Brown, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

The Law Office of D. Chipman Venie
D. Chipman Venie
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

Defendant Marcus Cisneros appeals his convictions of possession of a controlled substance (methamphetamine) and possession of drug paraphernalia, arguing that the district court erred in denying his motion to suppress the evidence against him. Deferring to the district court's factual finding that Defendant consented to be searched, we conclude that the district court correctly denied the motion to suppress.

**I.    BACKGROUND**

On April 3, 2008, a hearing on Defendant's motion to suppress was held at which Detective Sammy Marquez, the arresting officer in this case, provided the relevant testimony. The detective testified that he was investigating a separate incident at a city housing complex when he was flagged down by a city housing employee. The employee requested assistance with some individuals in a nearby apartment who were not supposed to be in the apartment.

The detective was standing outside of the apartment when Defendant approached him. The detective observed that the front window to the apartment was broken and that several individuals were leaving the apartment. Some of these individuals were carrying items. The detective began a conversation with Defendant

2

in order to learn what Defendant was doing at the apartment. The detective testified that his suspicions were aroused when he learned that Defendant had been partying at the apartment but did not know who lived there or why one of its windows was broken.

The detective then "called [Defendant] over . . . and asked him if [he] could pat him down for weapons." Defendant did not give verbal consent, but he complied with the detective's request. The detective could not remember exactly how he asked for consent—or, more specifically, whether he asked for consent or commanded Defendant to turn around and put his hands on his head—and he alternated between saying that he asked Defendant and saying that Defendant "did as he was told."

The detective explained that he usually performs a pat down in two parts: an "initial" and a "secondary." The secondary search is "to make sure [to get] close into the person's body for bulges." During the secondary search, the detective was "[s]till looking for weapons, but if [he felt] anything out of sorts, [he would] definitely identify it." While he was performing a secondary search on Defendant, the detective felt what he identified as a pipe. The detective asked what the object was, but Defendant did not answer. The detective testified that he then "asked [Defendant] if [he] could grab it, and I believe he either shrugged or nodded, gave me an affirmative physical response, to where I actually took the item out."

3

After seizing the pipe, the detective continued his search. Although the search was nominally for weapons, the detective testified that he was now also looking for narcotics. The detective felt a lump in Defendant's right "coin pocket." When he asked Defendant what the object was, Defendant "did not make any verbal confirmations; however, he did, once again, shrug and nod that the item could be removed." The detective could not recall if he asked for consent. The detective removed the item, which turned out to be several baggies containing methamphetamine. The detective then arrested Defendant and removed all remaining items from Defendant's person.

The district court denied Defendant's motion to suppress. The court made no written findings of fact; however, it did make oral findings at the end of the hearing. First, the court found that the detective had asked for permission to frisk Defendant, that Defendant consented by putting his hands on his head, and that he did not withdraw his consent at any time. Second, the court found that during the frisk, the detective felt what he recognized as a pipe, that the detective asked permission to remove the pipe from Defendant's pocket, and that Defendant consented by nodding his head to indicate yes. Based on these findings, the district court denied Defendant's motion to suppress. At the subsequent jury trial, Defendant was convicted of both charges against him.

## II.    DISCUSSION

Defendant argues that the district court's decision to deny his motion to suppress was in error for any of five[1] reasons:  (1) the initial detention was without reasonable suspicion of criminal activity, (2) there were not specific articulable facts to support the *Terry* frisk, (3) seizure of the pipe exceeded the scope of the *Terry* frisk because the pipe was not plainly contraband, (4) seizure of methamphetamine exceeded the scope of the *Terry* frisk because the methamphetamine was not obviously contraband, and (5) there is no "plain feel" exception to the warrant requirement under Article II, Section 10 of the New Mexico Constitution.  The State responded to these issues, and in addition argued that the entire encounter was permissible because it was consensual.  Because we affirm based on consent, we do not reach Defendant's arguments.

## A.    Defendant Was Detained

"[A] seizure subject to Fourth Amendment scrutiny does not occur every time a police officer approaches a citizen." *State v. Jason L.*, 2000-NMSC-018, ¶ 14, 129 N.M. 119, 2 P.3d 856 (alteration in original) (internal quotation marks and citation omitted). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable

---

[1]We note that in addition to these reasons, Defendant makes a sixth argument which is both cumulative and unsupported.

5

person would have believed that he was not free to leave." *State v. Lopez*, 109 N.M. 169, 170, 783 P.2d 479, 480 (Ct. App. 1989) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)), *modified on other grounds by Jason L.*, 2000-NMSC-018. We review the facts surrounding whether a detention occurred for substantial evidence; however, whether these facts would have led a reasonable person to believe that they were not free to leave is an issue that we review de novo. *Jason L.*, 2000-NMSC-018, ¶ 19.

The State does not argue that Defendant was not detained, and the district court appears to have been silent on this issue. Nevertheless, we address the issue because when "attempting to prove voluntary consent following an illegal stop, the prosecution has a much heavier burden to satisfy than when proving consent to search after a legitimate initial stop." *State v. Bedolla*, 111 N.M. 448, 456, 806 P.2d 588, 596 (Ct. App. 1991). We conclude that Defendant was detained. We need not determine exactly when the detention began. For our purposes, it is enough to note that when the detective asked Defendant for consent to a pat-down search, no reasonable person in Defendant's position would have felt free to leave. *See State v. Garcia*, 2009-NMSC-046, ¶ 38, 147 N.M. 134, 217 P.3d 1032 ("The critical factor is whether the policeman, even if making inquiries a private citizen would not, has otherwise conducted himself in a manner which would be perceived as a nonoffensive contact

6

if it occurred between two ordinary citizens." (internal quotation marks and citation omitted)).

Furthermore, the detention was permissible. An "[i]nvestigatory detention is permissible when there is a reasonable and articulable suspicion that the law is being or has been broken." *Jason L.*, 2000-NMSC-018, ¶ 20 (internal quotation marks and citation omitted). "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *Id.* The intuition or hunches of the officer do not rise to the level of reasonable suspicion. *See State v. Vandenberg*, 2003-NMSC-030, ¶ 21, 134 N.M. 566, 81 P.3d 19.

Under the circumstances of this case, the detective had reasonable suspicion for the investigatory detention of Defendant. The detective's attention was drawn to the apartment by a city housing official. He noticed that a window to the apartment was broken. Several people were leaving, some of whom were carrying away various items. Defendant told the detective that he had been partying in the apartment the night before and did not know who lived in the apartment. Under the totality of the circumstances, we agree with the State that the detective had reasonable suspicion that criminal activity might have been occurring, including but perhaps not limited to trespass, damage to property, burglary, breaking and entering, or larceny.

7

Reasonable suspicion can also justify a pat-down for weapons. "In order to determine whether a limited protective search is proper, the critical question is whether the officer had a particularized and objective basis for his suspicion that the suspect might have been armed and dangerous." *State v. Ketelson*, 2011-NMSC-023, ¶ 16, 150 N.M. 137, 257 P.3d 957 (internal quotation marks and citation omitted). The district court did not address whether the detective had reasonable suspicion that Defendant was armed and dangerous. The facts of this case suggest otherwise, and indeed, the detective testified to his belief that he did not "have to have an individualized suspicion of anybody" in order to search for weapons. However, we decline to affirm the pat-down of Defendant on this ground. As a result, the question becomes whether the need for reasonable suspicion that Defendant was armed and dangerous was obviated by Defendant's voluntary consent.

**B.      Substantial Evidence Supports the District Court's Finding of Consent**

A warrantless search or seizure is nevertheless reasonable under the Fourth Amendment if it falls within one of the enumerated exceptions, including consent. *See State v. Walker*, 1998-NMCA-117, ¶ 8, 125 N.M. 603, 964 P.2d 164. "To be deemed valid, the consent given to search must be voluntary and not a product of duress, coercion, or other vitiating factors." *State v. Paul T.*, 1999-NMSC-037, ¶ 28, 128 N.M. 360, 993 P.2d 74.

8

In determining whether consent was voluntary, we utilize a three-tiered analysis that includes the following factors: (1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights.

*State v. Muñoz*, 2008-NMCA-090, ¶ 19, 144 N.M. 350, 187 P.3d 696 (internal quotation marks and citation omitted).

Our Supreme Court recently set forth the standard of review applicable in this case:

> The review of a denial of a motion to suppress presents a mixed question of fact and law. We review the factual basis of the court's ruling for substantial evidence, deferring to the district court's view of the evidence. When, as here, there are no findings of fact and conclusions of law, we draw all inferences and indulge all presumptions in favor of the district court's ruling. Our review of the legal conclusions of the district court, however, is de novo.

*State v. Williams*, 2011-NMSC-026, ¶ 8, 149 N.M. 729, 255 P.3d 307 (internal quotation marks and citations omitted). The issue of consent is a factual issue that we review for substantial evidence. *Muñoz*, 2008-NMCA-090, ¶ 19. Although we might have determined the issue differently,

> [w]e must be mindful that it is the role of the trial court, and not the appellate court, to weigh the evidence and determine the credibility of witnesses. We will not substitute our own judgment for a determination of the trial court that is supported by substantial evidence in the record.

*State v. House*, 1999-NMSC-014, ¶ 33, 127 N.M. 151, 978 P.2d 967 (citation omitted).

We therefore examine whether the district court's finding that Defendant consented to be searched is supported by substantial evidence. Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (quoting *State v. Baca*, 1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776). We resolve all disputed facts in favor of the State, indulge all inferences in favor of the verdict, and view the evidence in the light most favorable to the verdict. *See House*, 1999-NMSC-014, ¶ 32. The question is whether the district court's "decision is supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318.

First, substantial evidence supports a finding that there was specific and unequivocal consent. The district court found that the detective "asked . . . for permission to frisk" Defendant, and that Defendant made "physical actions or nonverbal conduct which were intended as an assertion" amounting to consent. This finding is supported by the detective's testimony. The detective testified that he called Defendant over and asked for permission to pat him down. Defendant made no verbal

responses. Instead, according to the detective, the Defendant "came over and turned around right in front of me" and generally "did what I asked him to do." Additionally, when the detective felt the pipe and when he felt the drugs, the detective asked Defendant for permission to remove them. In each instance, Defendant nodded that the detective could remove the items that he felt. Drawing all inferences in favor of the district court's finding, we conclude that a reasonable mind could find the detective's testimony sufficient to support a finding that Defendant gave specific and unequivocal—although admittedly non-verbal—consent.

Second, substantial evidence supports a finding that the consent was given without duress or coercion. "Coercion involves police overreaching that overcomes the will of the defendant." *State v. Chapman*, 1999-NMCA-106, ¶ 21, 127 N.M. 721, 986 P.2d 1122. The detective testified that he asked for consent using "normal volumes" of voice and in a "calm demeanor." As in *Chapman*, there was no testimony that the detective used force, displayed his weapon, threatened Defendant with violence, arrest, or unwarranted prosecutions, subjected him to lengthy or abusive questioning, or promised leniency in exchange for consent. *See id.* In short, the evidence shows that police action was not overreaching and did not overcome the will of Defendant. Because the testimony showed that the detective politely asked for consent, and because there was no testimony that he performed any of the actions we

consider coercive, we conclude that there was substantial evidence to support a finding that the consent was given without duress or coercion.

Substantial evidence therefore supports both substantive prongs of the test for consent. Although we recognize that there is a presumption against the waiver of constitutional rights, the presumption is outweighed by the specific facts supporting consent in this case. We therefore affirm the district court's conclusion that the detective's encounter with Defendant was reasonable because it was consensual.

**C.    Article II, Section 10**

Defendant also argues that the standard for consent should be higher under the New Mexico Constitution than under the Fourth Amendment. Defendant claims that the federal analysis is flawed because "[u]nder the New Mexico Constitution, unlike the United States Constitution, there is a presumption that disfavors the waiver of constitutional rights."

We find Defendant's argument for enhanced protection under Article II, Section 10 of the New Mexico Constitution unpersuasive. Defendant relies on *State v. Anderson*, 107 N.M. 165, 754 P.2d 542 (Ct. App. 1988), for the proposition that a presumption against waiver exists in the New Mexico Constitution but is absent in federal law. But *Anderson*, which analyzes consent under the Fourth Amendment,

12

makes it clear that the presumption against waiver actually does apply under federal law:

> The determination of voluntariness involves a three-tiered analysis: (1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) *the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights*.

107 N.M. at 167, 754 P.2d at 544 (emphasis added, internal quotation marks and citation omitted). Furthermore, neither the *Anderson* court nor our Supreme Court has perceived the federal analysis to be flawed in the many times it has been applied since *Anderson* was decided. *See, e.g.*, *State v. Flores*, 1996-NMSC-059, ¶ 20, 122 N.M. 84, 920 P.2d 1038; *State v. Bond*, 2011-NMCA-036, ¶ 12, 150 N.M. 451, 261 P.3d 599; *Muñoz*, 2008-NMCA-090, ¶ 19; *State v. Pierce*, 2003-NMCA-117, ¶ 20, 134 N.M. 388, 77 P.3d 292. We therefore decline Defendant's invitation to adopt a higher standard for consent under the New Mexico Constitution.

**III.    CONCLUSION**

For the foregoing reasons, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

13

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief, Judge**


_____

**RODERICK T. KENNEDY, Judge**