This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                         **NO. 29,830**

**JACOBO ROCHA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Albert S. "Pat" Murdoch, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

Defendant Jacobo Rocha was convicted of possession of cocaine after his motion to suppress was denied. Defendant argued that his detention at gunpoint rendered his consent involuntary. The district court found that the consent was voluntary because the officer's request to search was given in Defendant's native language (Spanish) and because Defendant had lived in the United States for eighteen years. We reverse.

**I.      BACKGROUND**

Although the parties are familiar with the facts, we present them here to give a complete account of the circumstances known to the district court at the time it made its decision. Two witnesses were presented: Officer Javier Lopez, who was called by the State, and Defendant.

Lopez testified as follows. He and another officer were parked together when they heard gunshots nearby. The officers began to investigate, and an unidentified man indicated that the shots had come from behind a building. The officers went behind the building and saw two people. The officers "approached, guns drawn, and commanded" the people to show their hands. Both men complied.

At this point, the officers were separated from the men by a chain link fence, and the men were separated by another fence. The officers climbed a fence into the

yard with one of the people. The officers instructed Defendant to climb the other fence to be in the same yard with everyone else. When Defendant first tried to climb the fence, his right hand moved so that Lopez could not see it. Lopez aimed his gun at Defendant and commanded him to show his hands. Defendant complied. Lopez described himself as "[v]ery" tense at this point.

Defendant climbed the fence without further incident. Lopez began a search of Defendant to make sure Defendant had no weapons. During the patdown, Lopez felt something he thought was a baggie of cocaine. He asked Defendant what it was, and Defendant replied that he thought it was money. Lopez asked if he could check the pocket, and Defendant agreed. Lopez found a baggie of white powdery substance which was later identified as cocaine. On cross-examination, Defendant agreed that he gave the officer permission to search his pockets. Because Lopez had initially determined Defendant was more comfortable speaking Spanish, this conversation was conducted in Spanish.

Defendant argued that the short time between when he was being commanded to do things at gunpoint and when Lopez requested to search Defendant's pocket rendered his consent involuntary. The State argued that consent was voluntary because Defendant spoke with Lopez in Spanish and because Defendant had lived in the country for eighteen years. The district court found that consent was voluntary

because Defendant "was given the choice of yes or no, and in spite of the fact [that] the original contact was at gunpoint, the question was done in [Defendant]'s native language."

## II.  DISCUSSION

"Searches that are . . . consensual are an exception to the warrant requirement." *State v. Paul T.*, 1999-NMSC-037, ¶ 28, 128 N.M. 360, 993 P.2d 74.  "To be deemed valid, the consent given to search must be voluntary and not a product of duress, coercion, or other vitiating factors."  *Id.*  The State bears the burden of proving voluntariness, which depends on the totality of the circumstances.  *See id.*

> The voluntariness of consent "involves a three-tiered analysis: (1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights."

*State v. Pierce*, 2003-NMCA-117, ¶ 20, 134 N.M. 388, 77 P.3d 292 (quoting *State v. Anderson*, 107 N.M. 165, 167, 754 P.2d 542, 544 (Ct. App. 1988)).  "Whether consent was voluntarily given is a factual question, and the trial court's determination will not be disturbed on appeal unless it is not supported by substantial evidence."  *Paul T.*, 1999-NMSC-037, ¶ 28.

Because our standard of review is substantial evidence based on the totality of the circumstances, our cases tend to be fact-specific.  Nevertheless, we observe that

4

our courts have not hesitated to reverse district court findings that consent was voluntary. *See State v. Davis*, 2011-NMCA-___, ¶¶ 18-19, ___ N.M. ___, ___ P.3d ___ (No. 28,219, Aug. 10, 2011) (finding consent was not voluntary when a defendant was surrounded by numerous police cars and a helicopter, police were armed with assault rifles, and police appeared to have already started to search); *Pierce*, 2003-NMCA-117, ¶ 21 (finding consent was not voluntary when police repeatedly asked a handcuffed defendant about a bulge in his sock for an extended period of time until the defendant "capitulated"); *State v. Ruud*, 90 N.M. 647, 650-52, 567 P.2d 496, 499-501 (Ct. App. 1977) (finding that the State had not met its burden of showing voluntary consent when the only evidence was that the defendant agreed when asked for consent).

The State did not meet its burden in this case. The evidence establishes two points relevant to consent: (1) that Defendant was held at gunpoint by two tense officers immediately prior to his "consent," and (2) that Defendant answered "[y]es" when asked if Lopez could search his pocket. Because both Lopez and Defendant testified that Defendant consented, there is substantial evidence to support the conclusion that Defendant's consent was positive and unequivocal. This is also the only evidence capable of supporting a finding that the consent was voluntary. But the totality of the circumstances paints a far different picture, especially when viewed in

light of the presumption against waiver of constitutional rights. As in *Davis*, the officers had made a strong show of force, and Lopez asked to search the pocket after he had already began a search of Defendant's person. There was little time between when Defendant was being commanded at gunpoint and when Lopez asked to look in his pocket. Far from proving voluntariness, the State's evidence is actually probative of duress and coercion.

**III.    CONCLUSION**

For the foregoing reasons, we reverse the order denying Defendant's motion to suppress and remand for further proceedings consistent with this Opinion.

**IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**RODERICK T. KENNEDY, Judge**