**Certiorari Granted, October 4, 2011, No. 33,203**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-102**

**Filing Date: August 10, 2011**

**Docket No. 28,219**

**STATE OF NEW MEXICO,**

   **Plaintiff-Appellee,**

**v.**

**NORMAN DAVIS,**

   **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**John M. Paternoster, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**FRY, Judge.**

**{1}**     After being tipped off by a surveillance helicopter that there was vegetation spotted in Defendant's greenhouse and plants behind his house, at least six or seven armed law enforcement officers and at least five government vehicles entered Defendant's property as the helicopter hovered overhead.  While officers spread out across the property, Officer

1

William Merrell told Defendant that officers in the helicopter believed they had located marijuana at Defendant's residence. Officer Merrell asked Defendant for consent to search the property and, after some hesitation, Defendant said he would permit the search, whereupon officers discovered marijuana. When the district court denied his suppression motion, Defendant entered a conditional plea to one count of possession of a controlled substance. We conclude that the State failed to establish that Defendant's consent was voluntary and reverse the district court's denial of Defendant's suppression motion.

## BACKGROUND

**{2}** The New Mexico State Police, with the assistance of the New Mexico National Guard, undertook an operation to identify marijuana "plantations" in Taos County, New Mexico. The operation utilized two Army National Guard helicopters for air surveillance and two ground teams composed of individuals from various law enforcement agencies. During the operation, a spotter in one of the helicopters directed a ground team to Defendant's property, stating that he observed "vegetation" in the greenhouse and "plants at the back of the house." Defendant, who was seventy-two years old at the time, was at his residence when the ground team arrived. At least six or seven uniformed, armed officers, some carrying semi-automatic weapons, entered Defendant's property, disbursed, and formed a perimeter around part of the property. At least five vehicles from different law enforcement agencies and the National Guard also entered the property, while the helicopter hovered directly above.

**{3}** Officer Merrell recorded the encounter with Defendant that followed. Officer Merrell approached Defendant, identified himself, and said that "the helicopter [was] looking for marijuana plants and they believe they've located some at your residence." He then asked Defendant for permission to search the residence. Defendant asked what would happen if he said no, and Officer Merrell responded, "Well, then we will secure the residence. That's up to you." When Officer Merrell again asked Defendant for permission to search the property, Defendant said, "Sure." Defendant then said, "Looks like they're searching anyway." Officer Merrell replied, "No, they're just here to make sure—our biggest thing is safety. We're not going to be searching. If you're giving us permission to search, I'll get a form." Officer Merrell then asked Defendant if there were marijuana plants in the greenhouse, and Defendant said that there were. When Officer Merrell produced a consent form and asked Defendant to sign it, Defendant said, "I'm not really thrilled about you searching my house" and "I don't know if I should do this; I don't know if it is in my best interest." He then asked what would happen if he did not sign the consent form, and Officer Merrell responded that he "would go forth and try to execute a warrant through the district attorney's office." Defendant ultimately signed the consent form.

**{4}** Defendant testified that his greenhouse is made of opaque material and that someone in a helicopter could not have seen the marijuana plants in the greenhouse. He also testified that when he first came out of his house to investigate the helicopter racket, he saw officers near buildings on his property who appeared to be "searching or looking in[to] those buildings."

2

**{5}**     Officers searched Defendant's property and found marijuana and drug paraphernalia. Defendant was indicted for possession of marijuana and possession of drug paraphernalia. Defendant filed a motion to suppress the evidence obtained from the search, arguing that the helicopter surveillance of his property violated the federal and state constitutions and that his consent was not voluntarily given. The district court denied Defendant's motion, finding that the helicopter flyover was "just barely permissible" and that Defendant's consent to the search was valid and not given under duress or coercion. Defendant then entered a conditional guilty plea, and this appeal followed.

**{6}**     Although this case was submitted to this panel in 2009, it was discovered that a portion of the recording of the suppression hearing was missing. We ordered the parties to attempt to reconstruct the missing portion, and they submitted their stipulations in June 2011.

## DISCUSSION

**{7}**     In reviewing a district court's decision regarding a motion to suppress, we conduct a two-part analysis. "[W]e review any factual questions under a substantial evidence standard and we review the application of law to the facts de novo." *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57 (internal quotation marks and citation omitted).

**{8}**     On appeal, Defendant argues that (1) the helicopter surveillance of his property violated the federal and state constitutions, (2) his consent to a search of his property was not voluntarily given and was not purged from the taint of a Fourth Amendment violation arising from the illegal air surveillance, and (3) the district court erroneously denied Defendant's motion for judicial view. Because the issue of Defendant's consent is dispositive here, we do not address the remaining issues.

### Validity of Consent

**{9}**     Defendant argues that the district court erroneously determined that his consent to a search of his property was voluntarily given under the Fourth Amendment. In a letter decision, the district court entered factual findings that essentially tracked the recording made by Officer Merrell, with one exception. The court found that Defendant admitted there was marijuana in his greenhouse *before* he gave oral consent to the search. In fact, according to the recording, the admission followed Defendant's consent. The court found that Defendant gave consent to the search, which it concluded was valid under the Fourth Amendment.

**{10}**     On appeal, Defendant contends, as he did below, that his consent was not voluntarily given but the product of duress and coercion or acquiescence. Defendant argues that his consent was coerced because his property was swarmed by heavily armed police officers who were spread throughout his property and that a helicopter was flying directly overhead throughout his encounter with officers. Defendant also contends that he acquiesced in the

3

search because he thought the officers were already searching his property and because he was feeling ill.

**{11}** Generally, in order to prove that a warrantless search or seizure under the Fourth Amendment was reasonable because it met the consent exception, the prosecution bears the burden of proving that, under the totality of the circumstances, "the consent given to search [was] voluntary and not a product of duress, coercion, or other vitiating factors." *State v. Paul T.*, 1999-NMSC-037, ¶ 28, 128 N.M. 360, 993 P.2d 74. The issue is a factual one that we review for substantial evidence. *Id.*; *see State v. Chapman*, 1999-NMCA-106, ¶ 19, 127 N.M. 721, 986 P.2d 1122. "Although we must view the evidence and inferences in the light most favorable to the prosecution, the presumption of the trial court's correctness does not replace the requirements of proof." *State v. Valencia Olaya*, 105 N.M. 690, 694, 736 P.2d 495, 499 (Ct. App. 1987).

**{12}** On appeal, we undertake a three-tiered analysis in assessing the voluntariness of a consent to search. First, the consent must be unequivocal and specific; second, the consent must be given without duress or coercion; and third, the first two factors must be viewed with a presumption against the waiver of constitutional rights. *State v. Flores*, 1996-NMCA-059, ¶ 20, 122 N.M. 84, 920 P.2d 1038. To determine the voluntariness of consent, we consider factors such as "the individual characteristics of the defendant, the circumstances of the detention, and the manner in which the police requested consent." *State v. Pierce*, 2003-NMCA-117, ¶ 20, 134 N.M. 388, 77 P.3d 292. "Ultimately, the essential inquiry is whether [the d]efendant's will had been overborne." *Id.*

**{13}** Applying the three-tiered analysis mentioned above to this case, we conclude that although Defendant gave specific and unequivocal consent to a search of his property, the consent was given under duress and coercive circumstances. Applying the presumption against a waiver of Defendant's constitutional rights, we conclude that the voluntariness of Defendant's consent was not established by substantial evidence and that the district court failed to consider the totality of circumstances. We explain.

**Unequivocal and Specific Consent**

**{14}** Initially, we conclude that substantial evidence supports the district court's findings that Defendant's oral and written consent to a search of his property was specific and unequivocal at the time it was given to Officer Merrell. Both Defendant and Officer Merrell testified at the suppression hearing that Defendant gave actual oral and written consent to the search. Defendant's written consent form was admitted as evidence at the hearing, and Officer Merrell's recording of the encounter confirms that Defendant orally consented to a search of his greenhouse and residence and that he signed the written consent form. *See Chapman*, 1999-NMCA-106, ¶ 20 (holding that "[s]ubstantial evidence exist[ed] of clear and positive testimony that the consent was specific and unequivocal" based on the uncontradicted, unimpeached testimony of the deputy); *see also State v. Cohen*, 103 N.M. 558, 563, 711 P.2d 3, 8 (1985) (holding that consent was specific and unequivocal on the basis of a written consent form).

4

**{15}** This does not end the inquiry, however. We must determine whether Defendant's consent was given without duress or coercion, considering the totality of the circumstances.

**Duress or Coercion**

**{16}** Although Defendant gave specific and unequivocal consent, we conclude that the consent was given under duress and coercive circumstances. Defendant was surrounded by numerous uniformed, armed law enforcement officers and several law enforcement vehicles while a helicopter hovered overhead. Professor LaFave observes in his treatise that, although such circumstances are not per se coercive, "[t]he presence of a number of policemen is likely to suggest that the police are contemplating an undertaking which does not depend upon the cooperation of the individual from whom permission to search is being sought." 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 8.2(b), at 62 (4th ed. 2004). Although only Officer Merrell approached Defendant to seek consent, it is undisputed that the remaining officers were spread throughout the property and were visible to Defendant during his exchange with Officer Merrell.

**{17}** In its discussion of the lawfulness of the helicopter surveillance, the district court commented that there was "merit to the claim that the police swooped in as if they were in a state of war, searching for weapons or terrorist activity," which "can be terrifying and intimidating to most normal persons." Although the district court found the helicopter search "just barely permissible" on these facts, it did not address these same facts in the context of whether the consent was coerced. In fact, the only circumstance the district court mentioned in its discussion of coercion was Officer Merrell's statement that he would obtain a search warrant if Defendant did not consent to the search. The court dismissed this circumstance as simply an "explanation of the process that would be followed."

**{18}** In our view, the district court failed to consider the totality of the coercive circumstances brought to bear on Defendant. The obtrusive presence of officers, vehicles, and a helicopter was at least one factor supporting a finding of coercion, and the officers were heavily armed, carrying both their service handguns as well as AR-15 semi-automatic weapons. Although Officer Merrell testified that, to his knowledge, the officers did not draw or point their weapons, Defendant testified that he could see the weapons. Thus, the display and number of weapons was an additional factor pointing to coercion, one that the district court also did not address. *Cf. Chapman*, 1999-NMCA-106, ¶ 21 (giving as examples of coercion the improper use of force or the threatening display of weapons before consent is given).

**{19}** Another factor pointing to duress or coercion is the evidence that Defendant thought his refusal to consent was futile and that he acquiesced to a claim of authority because he thought the officers were already searching his property. While the State dismisses this argument because Officer Merrell explained that the officers were approaching the greenhouse as part of their normal safety procedure, Officer Merrell acknowledged that Defendant had the perception that the officers had already started to search his property. Officer Merrell's testimony and the recording of the encounter also establish that Officer Merrell had to tell the officers to back off. By appearing to have already started the search,

5

the officers communicated to Defendant that they were authorized to make the search even without consent. *See* LaFave, *supra*, § 8.2(a), at 60-61 (explaining that "if the police have already attempted to make the search without the person's cooperation, . . . they have . . . communicated to the individual a claim that they are authorized to make the search even without consent" (footnote omitted)).

{20} Finally, it is significant that Officer Merrell communicated to Defendant that he would obtain a search warrant if Defendant declined to consent to the search. The district court dismissed the coercive effect of this communication in reliance on *State v. Shaulis-Powell*, 1999-NMCA-090, 127 N.M. 667, 986 P.2d 463. In *Shaulis-Powell*, the officer testified that he told the defendants that he "felt" or "believed" that he had enough information to obtain a search warrant if consent was not given. *Id.* ¶ 11 (internal quotation marks omitted). In that case, this Court did not construe the officer's statement as an assertion that he could get a warrant, but as the officer's assessment of the situation. *Id.* Here, the district court likened Officer Merrell's response to the statement given by the officer in *Shaulis-Powell*. On appeal, however, we conclude that *Shaulis-Powell* is distinguishable because Officer Merrell's statements were more assertive than those of the officer in *Shaulis-Powell*. Although Officer Merrell told Defendant several times that he did not have to give consent, he stated that the execution of a warrant would only take about thirty minutes and when Defendant responded that he guessed that he really did not have any options at that point, Officer Merrell did not respond at all. Thus, Officer Merrell appeared to assert that it would be futile to refuse consent. *See generally* LaFave, *supra*, § 8.2(c), at 69-75 (discussing the distinction between threatening to seek and threatening to obtain a search warrant). As a result, there was evidence that Defendant thought his refusal to consent was futile and that he acquiesced to a claim of authority.

{21} Because the district court did not properly consider the totality of the circumstances, we determine that the State failed to meet its burden of demonstrating that Defendant's consent was voluntary. Defendant was subjected to coercive circumstances and was under duress when he gave consent. *See Dale v. State*, 2002 OK CR 1, ¶¶ 4-8, 38 P.3d 910, 911-12 (holding that the defendant's consent to search his premises was involuntary considering the totality of the circumstances, including an unlawful entry onto his property by climbing over a locked gate, the number of agents participating, the fact that they were armed with both pistols and semi-automatic weapons, and the presence of a police helicopter immediately overhead during the encounter). We conclude that the district court erred in denying Defendant's motion to suppress.

**CONCLUSION**

{22} For the foregoing reasons, we reverse and remand to the district court for proceedings consistent with this Opinion.

{23} **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

6

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**RODERICK T. KENNEDY, Judge**

**Topic Index for *State v. Davis*, No. 28,219**

**AE**          **APPEAL AND ERROR**
AE-SR          Standard of Review
AE-SB          Substantial or Sufficient Evidence

**CT**          **CONSTITUTIONAL LAW**
CT-FA          Fourth Amendment
CT-SU          Suppression of Evidence

**CL**          **CRIMINAL LAW**
CL-CL           Controlled Substances

**CA**          **CRIMINAL PROCEDURE**
CA-CN          Consent
CA-MR          Motion to Suppress
CA-SZ          Search and Seizure
CA-WA          Warrantless Arrest
A-WS          Warrantless Search