IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-028

Filing Date: June 13, 2013

Docket No. 33,203

STATE OF NEW MEXICO,

   Plaintiff-Petitioner,

v.

NORMAN DAVIS,

   Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
John M. Paternoster, District Judge

Gary K. King, Attorney General
Martha Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Acting Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Respondent

OPINION

MAES, Chief Justice.

{1} Defendant Norman Davis was indicted for possession of marijuana of eight ounces or more, a fourth degree felony, contrary to NMSA 1978, Section 30-31-23(A) and (B)(3) (2011), and possession of drug paraphernalia, a misdemeanor, contrary to NMSA 1978, Section 30-31-25.1(A) (2001). These charges resulted from the New Mexico State Police Operation "Yerba Buena 2006" aimed at marijuana eradication in the remote area of Carson Estates in Taos County.

1

**{2}**     Defendant filed a motion to quash the search warrant and suppress the marijuana and paraphernalia seized. The trial court denied the motion and the Court of Appeals reversed. We granted certiorari to address whether the Court of Appeals erred in overruling the trial court's dismissal of Defendant's motion to suppress because there was substantial evidence to support the trial court's finding that Defendant voluntarily consented to the search of his home.

## I.     FACTS AND PROCEDURAL HISTORY

**{3}**     The New Mexico State Police, assisted by New Mexico Game and Fish officers, the New Mexico National Guard, and the Region III Narcotics Task Force, utilized two army 0H 58 Jet Ranger helicopters and two ground teams to execute Yerba Buena. The helicopters were intended to spot possible marijuana plantations from the air, guide the ground teams into the area to confirm or to deny the observation, and provide cover and safety for the ground officers. After being alerted by one of the helicopters to the presence of a greenhouse and vegetation in Defendant's backyard, around six or seven law enforcement officers, armed with their semi-automatic service weapons, and several government vehicles created a secured premise around Defendant's property. The helicopter hovered above Defendant's home between the height of 50-500 feet.

**{4}**     Defendant, seventy-two years old, was at home because he was not feeling well. Bothered by the racket of the helicopter, Defendant got out of bed to see what was going on.

**{5}**     Only Officer William Merrell approached Defendant, who was standing outside of his home. Defendant asserts that Officer Merrell "confronted" him while holding a rifle and side arm. There is no evidence on record that any officer ever unholstered his weapon. Officer Merrell's belt tape recorded the conversation. Officer Merrell identified himself and stated that the helicopter had identified marijuana on Defendant's property. Officer Merrell asked permission to search the residence, and Defendant asked what would happen if he said no. Officer Merrell responded that if Defendant refused to allow the search, the officers would secure the residence and that the decision was up to Defendant. Officer Merrell again asked to search Defendant's residence, and said, "wait guys, hold on" to the other officers on the property. Defendant then responded, "sure" and then "it looks like they are searching anyways." Officer Merrell responded that the officers were not yet searching, rather that they were there for safety and if given permission to search, Officer Merrell would provide Defendant with a consent form. Defendant then admitted that he was growing marijuana.

**{6}**     Officer Merrell provided Defendant with a consent form and asked him to sign it. Defendant responded "I'm not really thrilled about you searching my house" and "I don't know if I should do this; I don't know if it is in my best interest." Officer Merrell told Defendant that this was a decision he would need to make and he could not make it for Defendant. Defendant asked what would happen if he did not sign the consent form and Officer Merrell responded that he "would go forth and try to execute a warrant through the district attorney's office" which would take about 30 minutes. Defendant said, "Well I guess

2

I don't really have any options here do I?" Officer Merrell did not respond. Defendant then signed the consent form. The consent form contained language that Defendant was informed of his "constitutional right not to have a search made of his premises . . . without a search warrant" and his right to refuse to consent to the search.

{7}     Officer Merrell's tone was mild throughout the conversation and Defendant's tone was equally conversational. During the initial conversation, Officer Merrell told Defendant at least three times that the decision to consent was strictly Defendant's. The entire encounter, including the search and seizure, lasted approximately one hour. As a result of the search, officers seized fourteen marijuana plants growing in the greenhouse and both an undisclosed amount of marijuana and paraphernalia from the home.

{8}     Defendant filed a motion to quash the subpoena and suppress the marijuana and paraphernalia seized. Defendant asserted that his consent to search was not voluntary and his state and federal constitutional rights were violated before consent was given. The trial court denied the motion and Defendant appealed. The Court of Appeals, addressing only the issue of Defendant's consent, concluded that although his consent was specific and unequivocal, the State failed to provide substantial evidence that Defendant's consent was voluntary and the trial court failed to consider the totality of circumstances. *State v. Davis*, 2011-NMCA-102, ¶ 13, 150 N.M. 611, 263 P.3d 953 (citing *State v. Flores*, 1996-NMCA-059, ¶ 20, 122 N.M. 84, 920 P.2d 1038).

{9}     The State appealed to this Court. We granted certiorari to address whether the Court of Appeals erred in overruling the trial court's dismissal of Defendant's motion to suppress because the State argues there was substantial evidence to support the trial court's finding that Defendant voluntarily consented to the search of his home.

## II.    STANDARD OF REVIEW

{10}    The voluntariness of consent is a factual question in which the trial court must weigh the evidence and decide if it "is sufficient to clearly and convincingly establish that the consent was voluntary." *State v. Anderson*, 107 N.M. 165, 167-68, 754 P.2d 542, 544-45 (Ct. App. 1988). Factual questions are viewed under a substantial evidence standard, and the application of law to the facts de novo. *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. In conducting such a review, "[t]he question is whether the [trial] court's decision is supported by substantial evidence, not whether the trial court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318 (internal citation omitted)

## III.    DISCUSSION

{11}    The State asserts that Defendant's consent satisfies the test for voluntary consent as articulated in *Anderson*, 107 N.M. 165 at 167, 754 P.2d at 544. The State agrees with the Court of Appeals that Defendant's consent was specific and unequivocal. However, the

3

State argues that substantial evidence supports the trial court's finding that Defendant did not simply acquiesce to a showing of lawful authority. Instead of deferring to the trial court's finding of facts, the State asserts that the Court of Appeals engaged in its own fact-finding, contrary to its responsibility of review under a substantial evidence standard.

**{12}** Defendant argues that his consent was not voluntary. Because of the number of armed officers and the presence of the helicopter, he claims he was merely acquiescing to a showing of lawful authority, which *State v. Shaulis-Powell*, 1999-NMCA-090, ¶ 10, 127 N.M. 667, 986 P.2d 463 held does not constitute valid consent. Defendant claims that the Court of Appeals applied the correct standard of review and properly considered the totality of the circumstances, while the trial court did not consider the totality of the circumstances and instead selectively picked facts to make its determination.

**{13}** The voluntariness of consent is a factual question in which the trial court must weigh the evidence and decide if it is sufficient to clearly and convincingly establish that the consent was voluntary. *Anderson*, 107 N.M. at 167-68, 754 P.2d at 544-45. The State has the burden of proving that, under the totality of the circumstances, consent to search was given freely and voluntarily. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *State v. Flores*, 2008-NMCA-074, ¶ 13, 144 N.M. 217, 185 P.3d 1067.

**{14}** Courts utilize a three-tiered analysis when determining voluntariness: "(1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights." *Anderson*, 107 N.M. at 167, 754 P.2d at 544 (citations omitted). Because the third prong is an acknowledgment of our presumption against waiving constitutional rights, we focus on the first two prongs. "Ultimately, the essential inquiry is whether [d]efendant's will has been overborne." *State v. Pierce*, 2003-NMCA-117, ¶ 20, 134 N.M. 388, 77 P.3d 292 (internal citation omitted).

## A. Defendant gave specific and unequivocal consent

**{15}** The Court of Appeals concluded "that substantial evidence supports the [trial] court's findings that Defendant's oral and written consent to a search of his property was specific and unequivocal at the time it was given to Officer Merrell." *Davis*, 2011-NMCA-102, ¶ 14. We agree.

**{16}** Specific and unequivocal consent can be given in a variety of ways. For example, in *United States v. Pena*, the court held that an affirmative and direct oral response to an officer's request to search constituted specific and unequivocal consent. 143 F.3d 1363, 1367 (10th Cir. 1998) (holding that the defendant's response of "go ahead" following a request to search by an officer was unequivocal). More specifically, the clarity of a question and response can indicate specific and unequivocal consent. *State v. Muñoz*, 2008-NMCA-090, ¶ 20, 144 N.M. 350, 187 P.3d 696 (providing that where the Court found that the clarity

4

of the officer's request, followed by the defendant's subsequent compliance by emptying his pockets and removing his shoes, evidenced specific and unequivocal consent). A response without hesitation is yet another indication of an unequivocal response. *See, e.g.*, *State v. Chapman*, 1999-NMCA-106, ¶ 20, 127 N.M. 721, 986 P.2d 1122 (finding that the consent was unequivocal when the defendant admitted without hesitation to possessing certain items, and, following a request to search by the officer, responded affirmatively, exited the driver's seat and motioned to the trunk).

**{17}** Evidence of oral consent can be established through testimony of the parties. *Id.* The testimony must be clear and positive in order to show specific and unequivocal consent. *State v. Valencia Olaya*, 105 N.M. 690, 694, 736 P.2d 495, 499 (1987).

**{18}** The act of signing a consent to search form can also constitute specific and unequivocal consent. *See State v. Cohen*, 103 N.M. 558, 563, 711 P.2d 3, 8 (1985). In *State v. Lara*, 110 N.M. 507, 515, 797 P.2d 296, 304 (Ct. App. 1990),the Court of Appeals held that substantial evidence of such specific and unequivocal consent existed where the defendant responded without hesitation to questioning, provided a written statement and signed a form acknowledging he had been advised of his constitutional rights. *Id.*

**{19}** In this case, the facts leading up to the search are largely undisputed. Officer Merrell requested and received Defendant's consent prior to searching. Defendant can be heard on Officer Merrell's belt tape giving oral consent to search his property by responding "sure" and "all right." Nothing in the record indicates that Defendant ever firmly objected to or protested Officer Merrell's request to search. Officer Merrell also provided clear testimony as to the purpose of the search and clarified that the officers did not begin searching until they received Defendant's consent.

**{20}** There is clear testimony on the record constituting proof of Defendant's consent. Accordingly, Defendant's oral and written consent amounted to specific and unequivocal consent.

**B.      Defendant was not coerced into giving consent**

**{21}** The second tier of our analysis examines the voluntariness of Defendant's consent in the context of coercion. *Anderson*, 107 N.M. at 167-68, 754 P.2d at 544-45. The State argues that substantial evidence exists to support the trial court's finding that Defendant's consent was voluntary and it should be not disturbed on appeal. The State asserts that the Court of Appeals gave improper weight to the presence of a helicopter and the number of armed officers present because the Defendant himself never established that these things overbore his will.

**{22}** Defendant argues that the Court of Appeals correctly held that the trial court did not consider the totality of the circumstances in determining the coerciveness of Defendant's consent because it ignored competent evidence of coercion. Defendant asserts that the

5

presence of a helicopter, the number of armed officers, and his poor physical state created a coercive atmosphere and rendered his consent involuntary.

**{23}** "Coercion involves police overreaching that overcomes the will of the defendant." *Chapman*, 1999-NMCA-106, ¶ 21 (internal citation omitted). Specific factors indicating coercion include the use of force, brandishing of weapons, threat of violence or arrest, lengthy and abusive questioning, deprivation of food or water and promises of leniency in exchange for consent. *Id.* (citing *State v. Rudd*, 90 N.M. 647, 650-52, 567 P.2d 496, 499-501 (Ct. App. 1977)). However, the sheer number of officers or presence of weapons does not automatically generate coercion. *See United States v. Romero*, 743 F. Supp. 2d 1281, 1322 (D.N.M. 2010) (holding that the presence of five agents in and of itself does not render a citizen's consent coerced); *see also United States v. Drayton*, 536 U.S. 194, 204-05 (2002) (providing that the fact that officers are required to wear sidearms is well known to the public and is cause for assurance, thus the holstering of a weapon "is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon"). "[C]onsent is not voluntary if it is a mere acquiescence to a claim of lawful authority." *Shaulis-Powell*, 1999-NMCA-090, ¶ 10. When an officer unequivocally asserts that he will be able to obtain a warrant, a defendant's belief that refusal to consent would be futile demonstrates involuntary consent. *Id.* ¶ 11.

**{24}** On the other hand, factors of voluntariness can include "the individual characteristics of the defendant, the circumstances of the detention, and the manner in which the police requested consent." *Pierce*, 2003-NMCA-117, ¶ 20 (internal citation omitted); *see also Muñoz*, 2008-NMCA-090, ¶ 20 (explaining that based on the officer's non-confrontational tone and demeanor, the defendant's subsequent compliance with the officer's requests was not coerced). Further, when an officer simply expresses his assessment of the situation, that explanation does not prevent a defendant from insisting that a warrant be obtained prior to searching. *Shaulis-Powell*, 1999-NMCA-090, ¶¶ 10-11 (holding that the officer's comments that he "believed" and "felt" he had enough evidence to secure a warrant were not coercive). Similarly, an officer's assurance to report a suspect's compliance to the district attorney's office does not constitute an improper promise. *See State v. Sanders*, 2000-NMSC-032, ¶ 10, 129 N.M. 728, 13 P.3d 460 (stating that "merely promising to bring a defendant's cooperation to the attention of the prosecutor is not objectionable"). A reasonable explanation of the possibility of arrest and the process that will follow, or an officer's belief in his or her ability to obtain a warrant is permissible and neither constitutes coercion or invalidates consent. *Shaulis-Powell*, 1999-NMCA-090, ¶¶ 11, 15.

**{25}** As the trial court pointed out, this case is similar to the circumstances in *Shaulis-Powell*. In *Shaulis-Powell*, the Court of Appeals upheld the trial court's finding of voluntariness when officers came to the defendants' house to investigate the potential cultivation of marijuana. 1999-NMCA-090, ¶ 16. There, plain-clothed, armed officers approached defendants at their front door and requested permission to search for marijuana. *Id.* ¶¶ 3-5. One defendant asked whether they had a warrant, which one officer denied but responded that he "felt he had enough information to . . . secure one" and that if defendant

did not give consent he would seek to obtain a warrant. *Id.* ¶ 4. The defendant consented. *Id.* ¶ 5. The Court determined that the officer's explanation of the warrant process was reasonable and not a threat. *Id.* ¶¶ 11, 14. Even so, an officer's threat to perform some legal action does not invalidate consent. *Id.* ¶ 14 (internal quotation marks and citation omitted). One *Shaulis-Powell* defendant also attempted to argue that because the officers had secured the premise around her home, she was seized in a coercive atmosphere. *Id.* ¶ 16. Unpersuaded, the Court held that because defendant was free to come and go from the house, defendant was not seized and thus not coerced into giving consent. *Id.*

**{26}** As in *Shaulis-Powell,* the officers in this case created a safety perimeter around the property but Defendant was still allowed to move about freely. *See Shaulis-Powell,* 1999-NMCA-090, ¶ 16. The *Shaulis-Powell* officer's belief in his ability to obtain a search warrant without the defendants' consent is similar to Officer Merrell's response that he would "try to obtain a search warrant" if Defendant refused to consent. *Id.* ¶ 11. This statement was a request and not a demand and can logically be construed as a reasonable explanation of the process an officer would follow after a defendant refused to consent to a search. Therefore, Officer Merrell's statement was not coercive.

**{27}** We next address Defendant's argument that the mere presence of armed officers was enough to create coercion. In *Pena*, the Tenth Circuit found the circumstances to be noncoercive when four armed officers came to the defendant's motel room to search and question him. 143 F.3d at 1367. While the court acknowledged that the presence of several officers in a "home might be intimidating to the point of negating the voluntariness of consent in some situations" (citing *United States v. Davis*, 40 F.3d 1069, 1078 (10th Cir. 1994)), the mere presence of armed officers was not enough to create coercion. *Pena*, 143 F.3d at 1367. Only one officer actually spoke to the defendant, none of the officers unholstered their weapons, and all remained outside of the room until given permission by the defendant to enter. *Id.* The court stated there was no evidence that the officers conducted themselves in an unprofessional manner and thus the defendant's consent to search was not coerced. *Id.* In this case, similar to *Pena*, several armed officers arrived at Defendant's residence to search for marijuana. *Id.* In both situations only one officer approached the defendant. *See id.*; *Davis*, 2011-NMCA-102, ¶ 3. None of the officers in either case unholstered their weapons and all remained professional. *See Pena*, 143 F.3d at 1367. Additionally, the officers in both situations remained on the outskirts of the premises until given permission to enter. *Id.* Accordingly, the mere presence of armed officers was not enough to create coercion.

**{28}** The Court of Appeals states that there was a valid reason for Defendant to believe his refusal to consent would be futile in this case because Officer Merrell's statement to the other officers to "hold on" was evidence that they had already started searching. *Davis*, 2011-NMCA-102, ¶ 19. However, the trial court found and the record shows that Officer Merrell testified that he had informed Defendant that his officers had not started searching but instead were setting up a perimeter for safety. Officer Merrell further testified that he told Defendant that the officers would only begin searching if Defendant signed a consent

7

form. Accordingly because Officer Merrell directly addressed and corrected Defendant's belief, there was no valid reason for Defendant to believe his refusal to consent would be futile.

**{29}** We next address cases finding clear coercion that are distinct from this case. The *Recalde* court illustrated a clear example of coercion in finding the defendant's consent to accompany two armed officers to another city was involuntary. *United States v. Recalde*, 761 F.2d 1448, 1453 (1985), *overruled on other grounds by United States v. Enriques-Hernandez*, 94 F.3d 656 (1996). At the time of the requested consent, the officers had already searched the defendant's car trunk and luggage, taken and withheld his driver's license and registration, neglected to inform the defendant he was free to leave and the defendant himself testified he did not feel free to leave. *Id.* Additionally, the defendant was traveling alone in an isolated area and had been stopped in the middle of a rainstorm. *Id.* at 1453-54. The court held that these factors constituted a coercive atmosphere and rendered his consent involuntary. *Id.*

**{30}** The Court of Appeals found clear evidence of coercion in *Pierce*. At the time the defendant gave consent, he had been detained for twenty minutes while sitting on a curb handcuffed, with two officers standing over him, subjecting him to searches of his car and person. 2003-NMCA-117, ¶ 21. The Court held that the defendant eventually "capitulated" to the officers' repeated requests for consent. *Id.* "[I]n light of the presumption that disfavors the waiver of constitutional rights" the Court was "unwilling to accept that Defendant's permission . . . was free from coercion and duress." *Id.*

**{31}** Unlike *Recalde* and *Pierce*, Defendant was never detained. Instead, Defendant's initial conversation with Officer Merrell lasted about nine minutes. Defendant was in his own home and went to lie down after giving the officers permission to search, unlike in *Recalde* where the defendant was traveling alone in an isolated area, during a storm, and was unable to leave. *Recalde*, 761 F.2d at 1453-54. Defendant's situation is also distinguishable from *Pierce* where the defendant eventually capitulated to the officer's repeated questioning after he was detained for twenty minutes while handcuffed and forced to sit on a curb as the two officers stood over him. *Pierce,* 2003-NMCA-117, ¶ 21. In the case at bar, Defendant only spoke with one officer and was never arrested or physically restrained. Defendant never testified that he did not feel free to leave and in fact the testimony shows he was able to move about freely. While the Court of Appeals placed great significance on the presence of the police helicopter, the State argues, and we agree, that there is no evidence that the helicopter influenced Defendant's consent. In fact, the only testimony on record regarding Defendant's feelings about the helicopter was that he was bothered by the noise and had to get out of bed.

**{32}** Further, Officer Merrell's belt tape shows the conversation between him and Defendant was calm and slow. Both Officer Merrell and Defendant used normal tones. Defendant did not express any feelings of fear or pressure. While Defendant did vacillate between whether or not to consent to the search, Officer Merrell informed Defendant several

times that he was not required to provide consent.  Defendant orally consented and physically signed a consent to search form which again advised him of his rights.

**{33}** Finally, the defense argues that Defendant did not have sufficient capacity to consent that day because he was not feeling well.  Defendant argues that the physical and mental condition of a defendant is relevant when determining whether consent was voluntary under *United States v. Harrison*, 639 F.3d 1273, 1278 (10th Cir. 2011) and *Pierce,* 2003-NMCA-117, ¶ 20.  The trial court did however take Defendant's physical and mental condition into consideration when it determined that Defendant was "thoroughly cooperative, civil and peaceful" and "is an intelligent man with a greater than average storehouse of knowledge." Defendant's physical and mental ability to consent was yet another factor that the trial court used to determine that his consent had not been coerced.

**{34}** Therefore, substantial evidence does not exist to show that Defendant's will was overborne by any exertion of coercion by the officers to justify overturning the trial court's decision.  Instead, a review of the record, under a totality of the circumstances analysis, suggests that the trial court's finding of voluntary consent should be upheld.

## IV.    CONCLUSION

**{35}** We conclude that there was substantial evidence that Defendant voluntarily consented to the search and affirm the trial court's dismissal of Defendant's motion to suppress.  We remand to the Court of Appeals for further proceedings consistent with this Opinion.

**{36}    IT IS SO ORDERED.**


_____

**PETRA JIMENEZ MAES, Chief Justice**


**WE CONCUR:**


_____

**RICHARD C. BOSSON, Justice**


_____

**EDWARD L. CHÁVEZ, Justice**


_____

**CHARLES W. DANIELS, Justice**


_____

**BARBARA J. VIGIL, Justice**


9

**Topic Index for *State v. Davis*, No. 33,203**

**APPEAL AND ERROR**
Standard of Review
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**
Fourth Amendment
Suppression of Evidence

**CRIMINAL LAW**
Controlled Substances

**CRIMINAL PROCEDURE**
Consent
Motion to Suppress
Search and Seizure
Warrantless Arrest
Warrantless Search