This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                    **No. A-1-CA-34857**

**PAUL R. GADBURY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRENCH, Judge.**

{1} Defendant Paul Gadbury appeals from his convictions for possession of a controlled substance (methamphetamine), a fourth degree felony, and possession of one ounce or less of marijuana, a misdemeanor, contrary to NMSA 1978, Section 30-31-23 (B)(1) and (E) (2011). Defendant articulates three issues on appeal: whether (1) evidence discovered following his consent to search should have been suppressed because his consent was involuntary; (2) police officer testimony was sufficient to establish the identity of the controlled substances at issue in this case, and (3) there was sufficient evidence to support his convictions. We reject Defendant's assertions of error and affirm his convictions.

**BACKGROUND**

{2} The relevant facts are largely undisputed and were developed at the hearing on Defendant's motion to suppress and at trial. On May 20, 2013, Officer Andrew Matta responded to the home of Defendant's mother, Patsy Madera, to investigate a possible domestic battery between Defendant and Ms. Madera. Upon his arrival at the home, Officer Matta observed two males sitting in a vehicle near the garage—Defendant was in the driver's seat. Officer Matta spoke with Defendant and Ms. Madera, observed a flesh wound on Ms. Madera's arm, and ultimately concluded that a crime had been committed. Officer Matta placed Defendant under arrest for battery on a household member and performed a search incident to arrest. Among other items, Officer Matta

discovered a closed Altoids container, which he opened at the police station after transporting Defendant there. Inside the container was "a green leafy substance" that Officer Matta identified, by sight and smell, as marijuana.

{3}     Officer Kevin Matthews also responded to the scene and assisted Officer Matta. Officer Matthews spoke with Ms. Madera and her health aide, who both expressed concern that Defendant was taking Ms. Madera's prescription pain medication. Ms. Madera also asked Officer Matthews if he could obtain her garage door opener from Defendant. At the police station, Officer Matthews asked Defendant if he could retrieve the garage door opener from his vehicle. Officer Matthews also asked Defendant for consent to search his bedroom and his vehicle. Initially, Defendant refused. Officer Matthews told Defendant he understood and informed him that he would "possibly" be obtaining a search warrant to perform the searches. At that point, Defendant, who had been handcuffed by one hand to a table at the police station, agreed to the search, and signed a consent form permitting a search of his bedroom and vehicle.

{4}     Officer Matthews returned to Ms. Madera's home to perform the search. In Defendant's vehicle, Officer Matthews discovered various items, including a bag containing a white powdery crystal substance and two pipes, one of which had a white residue on it. Based on the foregoing events, Defendant was charged with two counts

of possession of a controlled substance and one count of possession of one ounce or less of marijuana.

{5}    Prior to trial, Defendant filed a motion to suppress, seeking suppression of all items seized on the basis that his consent was not valid, as it was neither clear nor unequivocal and was not freely and voluntarily given. After a hearing on the motion, at which both Officers Matta and Matthews testified, the district court denied Defendant's motion.

{6}    At trial, Officers Matta and Matthews recounted their testimony as described above, and also testified regarding the identity of the methamphetamine and marijuana. Officer Matta testified that in his four years as a law enforcement officer, he had encountered marijuana "hundreds" of times and was able to identify it based on its appearance, smell, and feel. He further testified that, in his opinion, the substance in the Altoids container on Defendant's person was marijuana. Officer Matthews—who also had significant law enforcement experience, including participation and training in controlled-substances investigations—testified that the white residue on the pipe and the white powdery substance he discovered in Defendant's vehicle were the same consistency and were both consistent with methamphetamine he had seized in other cases. He testified that he was unaware of other substances with the same appearance as methamphetamine and could sometimes

4

distinguish between methamphetamine and other crystal-like substances. Another agent involved in the investigation testified that he interviewed Defendant, who told him that the Altoids container contained marijuana and that the bag containing the white powdery substance was "[his] meth." Defendant was convicted of two possessory offenses, and this appeal followed.

**CONSENT**

{7}     Defendant challenges the denial of his motion to suppress, arguing that his consent was involuntary because (1) he was handcuffed to a table at the time that his consent was obtained, and (2) he consented only after Officer Matthews "told him he would get a search warrant." Valid consent to search "must be voluntary and not the product of duress, coercion, or other vitiating factors." *State v. Pierce*, 2003-NMCA-117, ¶ 19, 134 N.M. 388, 77 P.3d 292 (internal quotation marks and citation omitted). "The State bears the burden of proving voluntariness, which depends on the totality of the circumstances[,]" including the "individual characteristics of the defendant, the circumstances of the detention, and the manner in which the police requested consent." *Id.* ¶ 20. We review the district court's factual findings relative to voluntariness for substantial evidence—we do not reweigh the evidence or determine "whether the [district] court could have reached a different conclusion." *State v.*

*Davis*, 2013-NMSC-028, ¶ 10, 304 P.3d 10 (internal quotation marks and citation omitted).

**{8}** To assess the voluntariness of consent, courts employ a three-tiered analysis: "(1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights." *Id.* ¶ 14 (internal quotation marks and citation omitted). The first two factors are our primary concern, since the third is simply "an acknowledgment of our presumption against waiving constitutional rights[.]" *Id.*

**A.     Consent Was Specific and Unequivocal**

**{9}** Relative to the first factor, Defendant contends that he "did not clearly designate the extent of any consent granted." Specifically, in his motion to suppress below, Defendant asserted that he believed that the consent he gave was limited to retrieving the garage door opener from the passenger compartment of his car. Importantly, however, Defendant did not testify at the hearing on the motion to suppress, and Officer Matthews' testimony contradicted Defendant's assertions.

**{10}** "Specific and unequivocal consent can be given in a variety of ways." *Id.* ¶ 16. Here, Officer Matthews testified that upon arriving at the police station, he asked Defendant if he could retrieve the garage door opener from his vehicle and also asked

6

for consent to search his bedroom and vehicle. After initially refusing, Defendant orally agreed to the search. At that point, Officer Matthews testified that he filled out a consent-to-search form, which explained what he wanted to search. Officer Matthews then read the form to Defendant and let Defendant read it himself. Both Defendant and Officer Matthews signed this form, which was entered into evidence as State's Exhibit 1. The form clearly states: "I, the undersigned, do hereby voluntarily consent that my vehicle/room located at 608 Baltros Ct. together with all its contents thereof, may be searched by the officers securing this consent."

{11}     Defendant's signature appears on the form, and there is nothing in the record indicating that Defendant challenged the State's assertion that Defendant signed the consent form. Under these circumstances, we conclude that Officer Matthews' uncontradicted testimony and the signed consent-to-search form constitute substantial evidence that Defendant's consent was specific and unequivocal. *See id.* ¶ 18 ("The act of signing a consent to search form can . . . constitute specific and unequivocal consent."). Additionally, we find no evidence in the record to support Defendant's contention that he believed that the search would be limited to obtaining the garage door opener from the passenger compartment of his vehicle. Any such alleged belief would have been unreasonable given the evidence presented.

**B.     Consent Was Not Coerced or Given Under Duress**

7

{12} Defendant relies primarily on two facts for his assertion that his consent was involuntary due to coercion. First, he points out that he was in police custody and had been handcuffed to a table when Officer Matthews asked for permission to search. Secondly, he points out that he only consented after Officer Matthews told him he would be obtaining a search warrant.

{13} When assessing whether there was coercion, we consider whether specific factors were present, including: "the use of force, brandishing of weapons, threat of violence or arrest, lengthy and abusive questioning, deprivation of food or water and promises of leniency in exchange for consent." *Id.* ¶ 23. We also consider whether a defendant was in custody or under arrest at the time consent was obtained. *See State v. Herring*, 1966-NMSC-266, ¶ 13, 77 N.M. 232, 421 P.2d 767 ("Although the fact that consent is given while in custody or under arrest is clearly a factor to consider, we do not believe that such a situation makes voluntary consent impossible."); *State v. Mann*, 1985-NMCA-107, ¶ 31, 103 N.M. 660, 712 P.2d 6 (same).

{14} In this case, Defendant had been arrested for perpetrating a battery against his mother. Accordingly, he had been handcuffed, transported to the police station, and was in the booking room handcuffed by one hand to a table—a standard procedure according to Officer Matthews. In *Pierce*, we held that the defendant's consent was not voluntary when he had been pulled over for speeding, detained for over twenty

minutes, subjected to a search of his person and vehicle, and forced to sit on a curb with his hands handcuffed behind his back. 2003-NMCA-117, ¶¶ 2, 21. The officer then repeatedly asked the defendant, upon a second pat-down search, about a bulge in the defendant's sock, and the defendant eventually relented and gave in to the officer's request that he remove the item comprising of the bulge. *Id.* ¶ 21. Here, aside from being handcuffed, there is nothing to indicate that anything similar occurred. Upon questioning from the prosecutor, Officer Matthews testified that only he and Defendant were in the room when he asked for consent, Defendant was quiet and calm and was not threatened or promised anything. He further testified that Defendant was not forced to sign the consent form and did so without hesitation. In short, under these circumstances, we are not swayed by Defendant's argument that the fact that he was under arrest and handcuffed to a table rendered his consent the product of coercion.

{15} We are likewise unpersuaded that Officer Matthews' statement to Defendant that he would "possibly" be obtaining a search warrant constitutes "overreaching that overcomes the will of the defendant." *Davis*, 2013-NMSC-028, ¶ 23. In *Davis*, our Supreme Court explained that "mere acquiescence to a claim of lawful authority" is not voluntary consent. *Id.* (internal quotation marks and citation omitted). Hence, "[w]hen an officer unequivocally asserts that he will be able to obtain a warrant, a defendant's belief that refusal to consent would be futile demonstrates involuntary

9

consent." *Id.* However, "when an officer simply expresses his assessment of the situation, that explanation does not prevent a defendant from insisting that a warrant be obtained prior to searching." *Id.* ¶ 24. Ultimately, in *Davis*, the Court held that the defendant's consent was voluntary when an armed officer advised the defendant that he would try to obtain a search warrant if the defendant would not give consent. *Id.* ¶¶ 5-6, 26. The Court reasoned that the officer's statement was "a request and not a demand and [could] logically be construed as a reasonable explanation of the process an officer would follow after a defendant refused to consent to a search." *Id.* ¶ 26.

{16}     This case is analogous. Officer Matthews testified that when Defendant initially refused his request to search, he advised him that he understood and that he would possibly be obtaining a search warrant. As in *Davis*, there was no demand, and Officer Matthews' statement to Defendant could be construed as an explanation of what would happen next given that Defendant did not consent to a search. *See id.*; *State v. Shaulis-Powell*, 1999-NMCA-090, ¶¶ 10-11, 127 N.M. 667, 986 P.2d 463 (concluding that an officer's statement to a defendant that he believed that he had enough to obtain a search warrant was not coercive, but rather an assessment of the situation).

{17}     In sum, considering the totality of the circumstances and viewed in light of the presumption that disfavors the waiver of constitutional rights, we conclude that the district court could have reasonably found that the State met its burden in proving that

10

Defendant's consent was voluntary. Accordingly, we affirm the district court's denial of Defendant's motion to suppress.

**TESTIMONY REGARDING THE NATURE OF THE SUBSTANCES AND SUFFICIENCY**

{18}     Pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, Defendant next asserts that "lay witness testimony identifying the seized substances was insufficient to establish that they were controlled substances." Defendant also generally challenges the sufficiency of evidence to support his convictions. Although Defendant presents them as two separate issues, Defendant's first issue is subsumed by the general challenge to the sufficiency of the evidence. Hence, we address them together.

{19}     In reviewing the sufficiency of the evidence, we must determine whether substantial evidence, either direct or circumstantial, exists to support a verdict of guilty beyond a reasonable doubt for every essential element of the crime at issue. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. The evidence is reviewed in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences to uphold the conviction and disregarding all evidence and inferences to the contrary, to ensure that a rational jury could have found each element of the crime established beyond a reasonable doubt. *Id.*

{20} To convict Defendant of possession of one ounce or less of marijuana, the State was required to prove that (1) Defendant had one ounce or less of marijuana, (2) Defendant knew that it was marijuana, and (3) this happened in New Mexico on or about May 20, 2013. *See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured."); *see also* UJI 14-3101 NMRA (setting out the essential elements of possession of marijuana). To convict Defendant of possession of a controlled substance, the State was required to prove that (1) Defendant had methamphetamine in his possession, (2) Defendant knew that it was methamphetamine, and (3) this happened in New Mexico on or about May 20, 2013. *See Smith*, 1986-NMCA-089, ¶ 7 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured."); *see also* UJI 14-3102 NMRA (setting out the essential elements of possession of a controlled substance).

{21} To prove these elements, the State presented evidence that on May 20, 2013, Officer Matta placed Defendant under arrest for battery on a household member and conducted a search incident to arrest. During that search, Officer Matta discovered an Altoids container on Defendant's person that contained a green, leafy substance. Officer Matta further testified that in his three years as a law enforcement officer, he

12

encountered marijuana "hundreds" of times and was able to identify it. He testified that he identified the substance in the Altoids container as marijuana based on its appearance, smell, and feel. Relative to the methamphetamine, Officer Matthews testified that the white residue on the pipe and the white powdery substance he discovered in Defendant's vehicle were the same consistency and were both consistent with methamphetamine he had seized in other cases. In addition to the white residue and the substance discovered in Defendant's vehicle, Officer Matthews also found an ice cream tub containing an unopened bag of syringes and two pipes. He also found a black bag that held a glass pipe and a rubber band consistent with the type used as a tourniquet in a hospital setting.

{22} Another officer testified that he interviewed Defendant, and after he had waived his Miranda rights, Defendant confirmed that the Altoids can contained marijuana, and the substance inside a baggie showed to Defendant contained "[his] meth." Lastly, the officer testified that he sent the substance to the lab to be tested, and upon receipt of the results, he had no need to amend the criminal complaint filed against Defendant in this case charging him with, among other offenses, possession of methamphetamine.

{23} Defendant contends that the officers' lay testimony was insufficient to establish the identity of the marijuana and methamphetamine. Our case law is clear that "expert

testimony is not required to identify illegal drugs." *State v. Gerald B.*, 2006-NMCA-022, ¶ 23, 139 N.M. 113, 129 P.3d 149. Such opinion testimony is admissible, "and the qualifications of the witness go to weight and not admissibility." *State v. Rubio*, 1990-NMCA-090, ¶ 5, 110 N.M. 605, 798 P.2d 206. Here, the officers' respective qualifications qualified them to offer their opinions regarding the identity of the substances discovered. *See id.* ¶ 8 ("The identity of a controlled substance may further be established by persons having lay experience with the drug through prior use, trading, or law enforcement."). In addition to the officers' opinion testimony, the State presented other evidence, including Defendant's own admissions regarding the identity of the substances. *See State v. Godoy*, 2012-NMCA-084, ¶ 14, 284 P.3d 410 (holding that there was sufficient evidence that a substance was crack cocaine where two officers testified that the substance had the appearance of crack cocaine and where the defendant "raised the inference that the substance was an illegal narcotic by telling officers that he was a user and that the substance was for his personal use"); *Gerald B.*, 2006-NMCA-022, ¶ 24 (holding that "the jury could infer, from [the defendant's] admissions and the physical evidence, that the substance in [his] possession was marijuana"). Relative to the methamphetamine, there was also evidence presented regarding other items discovered along with the white substance that lead to an inference that the substance was methamphetamine. *See Godoy*, 2012-NMCA-084,

14

¶ 15 ("In deciding whether the evidence was sufficient to show the substance was cocaine, we may consider such circumstances as the appearance and packaging of the substance, its price, the manner of its use, and its effect on the user." (omission, internal quotation marks, and citation omitted); *Rubio,* 1990-NMCA-090, ¶ 8 (same). Based on the foregoing, we reject Defendant's argument relative to the identity of the substances and conclude that there is substantial evidence that the substances were, in fact, marijuana and methamphetamine, respectively.

{24} Defendant makes no specific arguments relative to any remaining elements of the relevant offenses, and we therefore do not address the sufficiency claim any further. Based on the evidence described above, we conclude that there was sufficient evidence presented, both direct and indirect, for a rational jury to conclude that Defendant committed both possessory offenses beyond a reasonable doubt.

**CONCLUSION**

{25} For the foregoing reasons, we hold that Defendant's consent was voluntary and sufficient evidence supported his convictions. Accordingly, we affirm.

{26} **IT IS SO ORDERED.**

_____
**STEPHEN G. FRENCH, Judge**

**WE CONCUR:**

15

_____

**J. MILES HANISEE, Judge**


_____

**JULIE J. VARGAS, Judge**