This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36480**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellant,

v.

**ERNEST LUGO,**

 Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Judge**

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellant

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**M. ZAMORA, Judge.**

**{1}** The State appeals the district court's order granting Defendant Ernest Lugo's motion to suppress. The district court found that Defendant's consent to search was not voluntary. The State argues there was insufficient evidence to support the district court's determination. We affirm.

**BACKGROUND**

**{2}**     Alamogordo police officers were dispatched to an Albertson's store regarding a shoplifter. The suspected shoplifter was arrested and asked the officers to notify Defendant—who was waiting for him in a vehicle in the parking lot—of his arrest. Officer Richard Wakefield walked to the vehicle to notify the individual as requested by the shoplifter. Officer Wakefield then encountered Defendant who was sitting in the driver seat of the vehicle.

**{3}**     Defendant was the sole occupant of the vehicle. During Officer Wakefield's short exchange with Defendant, the Officer noticed two things: (1) there was an odor of marijuana coming from the vehicle; and (2) there was what appeared to be a baggy of marijuana in the front console. When asked, Defendant admitted to possessing marijuana.

**{4}**     Based on these observations and Defendant's statement, Officer Wakefield asked Defendant whether he would consent to a search of the vehicle. Although Defendant said "yes," his responses to the request were somewhat hesitant, as we will discuss further in the analysis. Officer Wakefield ultimately searched the vehicle and found illegal drugs and drug paraphernalia. Defendant was charged with distribution of marijuana or synthetic cannabinoids; sale, distribution [sic] or possession of dangerous drugs (oxycodone); possession of drug paraphernalia; and possession or claim of an interest in property (U.S. currency in the amount of $346.00).

**{5}**     Defendant later filed a motion to suppress the evidence discovered in the search, arguing the warrantless search violated his rights under Article II, Section 10 of the New Mexico Constitution and the Fourth Amendment of the United States Constitution. Defendant asked the district court to suppress all physical evidence and statements acquired as a result of the search, asserting that his consent to search was not voluntary. Following an evidentiary hearing, the district court granted Defendant's motion. The State appeals.

**{6}**     Because this is a memorandum opinion, the parties are familiar with the facts and procedural history of the case and as we have noted, we reserve further discussion of the pertinent facts for our analysis.

**DISCUSSION**

**Defendant's Consent Was Not Specific and Unequivocal**

**{7}**     "We review the [district] court's factual determination [regarding the voluntary nature of [a d]efendant's consent . . ., given the totality of the circumstances, for substantial evidence." *State v. Chapman*, 1999-NMCA-106, ¶ 19, 127 N.M. 721, 986 P.2d 1122. The voluntariness of a defendant's consent is a question of fact. *State v. Valencia Olaya*, 1987-NMCA-040, ¶ 23, 105 N.M. 690, 736 P.2d 495. In the absence of a search warrant, the state bears "the burden of proving that a consent to search was given freely and voluntarily." *State v. Anderson*, 1988-NMCA-033, ¶ 7, 107 N.M. 165, 754 P.2d 542*.* "The question is whether the [district] court's result is supported by

substantial evidence, not whether the [district] court could have reached a different conclusion." *Id.* ¶ 8. "The possibility that on similar facts another [district] court may have drawn different inferences[,]" does not mean the decision must be reversed on appeal. *Id.*

**{8}** To determine the voluntariness of consent to search, we apply a three-tiered analysis: "(1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights." *Anderson*, 1988-NMCA-033, ¶ 7.

**{9}** The State argues that the district court's finding—that there was not clear and unequivocal consent—was not supported by substantial evidence. According to the State, Officer Wakefield's requests to search were clear, and he eventually received a clear and unequivocal response from Defendant. Defendant points to the fact that he expressed prolonged hesitation and uncertainty in response to requests to search the vehicle. The district court's decision was in large part based on Defendant's hesitation, as articulated in Officer Wakefield's testimony.

**{10}** Evidence of oral consent can be established through the testimony of parties. *Chapman*, 1999-NMCA-106, ¶ 20 (holding that a deputy's testimony concerning the defendant's consent was substantial evidence). Officer Wakefield was the sole witness during the evidentiary hearing on Defendant's motion to suppress. The question therefore is whether Officer Wakefield's testimony was clear and positive testimony to establish that Defendant's consent was specific and unequivocal. *See Anderson*, 1988-NMCA-033, ¶ 7.

**{11}** There are multiple ways to discern specific and unequivocal consent. Specific and unequivocal consent may be obtained by the use of a consent to search form, *see State v. Davis*, 2013-NMSC-028, ¶ 18, 304 P.3d 10 (noting that a consent form alone can establish substantial evidence of specific and unequivocal consent), or when consent is given without hesitation. *See Chapman*, 1999-NMCA-105, ¶ 20 (noting that a defendant's consent without hesitation satisfies the requirement that the consent be unequivocal); *see also Davis*, 2013-NMSC-028, ¶¶ 16-18 (citing cases that show how specific and unequivocal consent can be given). In deciding whether the evidence is sufficient to establish that consent was voluntary, the district court must "select[] which inferences to draw." *Anderson*, 1988-NMCA-033, ¶ 8 (holding that when a court engages in fact finding it may draw inferences to determine consent).

**{12}** In this case, the district court found Officer Wakefield's testimony that Defendant was hesitant in his responses, credible. Officer Wakefield testified that he asked for consent two separate times. Although Defendant said "yes" both times, Officer Wakefield testified that each time Defendant said "yes," his response was followed with a "but," and a story or concern about the vehicle not belonging to him. Officer Wakefield testified that he tried to help Defendant understand "from a legal point of view" who was in control of the vehicle, in response to Defendant's concerns about not owning the

vehicle. Nevertheless, he acknowledged that Defendant was hesitant and concerned "about something." He testified he was, "not sure how else to better describe the hesitation; it just seemed like he . . . was concerned about something . . . he just showed hesitation about speaking with me." Officer Wakefield testified that after he requested to search Defendant's vehicle for a second time and explained again who was in control of the car, "I guess [Defendant] understood . . . I'm not sure what was going on, with you know, in his own mind, but after explaining that, he said I could search the vehicle."

**{13}** The Officer's testimony makes clear that Defendant did not provide an affirmative, direct and oral response, nor did he sign a consent form—both means that can create specific and unequivocal consent. Instead, the testimony characterizes Defendant as being hesitant and concerned about allowing a search. The district court characterized Defendant's responses as "yes—but," with a conversation that took place after each request explaining himself. The district court found that the consent was not specific and unequivocal, noting that specific and unequivocal consent would not have had, or required, an explanation. We conclude that Officer Wakefield's testimony provides substantial evidence that Defendant's consent was neither specific nor unequivocal.

**{14}** Having determined Defendant did not give specific and unequivocal consent to search the vehicle, we need not address the second tier, whether coercion or duress undermined the voluntary nature of Defendant's consent. *See Davis*, 2013-NMSC-028, ¶ 14 (noting that the crucial inquiry is whether the defendant's will has been overborne). The third tier of our analysis "is an acknowledgment of our presumption against waiving constitutional rights, [thus] we focus on the first two prongs." *Id*. Because Defendant did not give specific and unequivocal consent, the presumption against a waiver of his rights under the Fourth Amendment and Article II, Section 10 was not rebutted. *See Valencia Olaya*, 1987-NMCA-040, ¶ 25 ("Since voluntary consent is a substitute for probable cause, it must be clear that actual consent was voluntarily given to overcome the presumption against [a] waiver of a constitutional right." (citation omitted)). We hold that substantial evidence supports the district court's order granting Defendant's motion to suppress.

**The State Did Not Preserve the "Plain View" Exception Argument**

**{15}** Alternatively, the State argues that the search was justified by the "plain view" exception to the warrant requirement. Defendant counters that the State failed to preserve the "plain view" basis for the warrantless search.

**{16}** To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked. *See* Rule 12-321 NMRA. "[T]he rule serves many purposes: it provides the lower court an opportunity to correct any mistake, it provides the opposing party a fair opportunity to show why the court should rule in its favor, and it creates a record from which this Court may make informed decisions." *State v. Janzen*, 2007-NMCA-134, ¶ 11, 142 N.M. 638, 168 P.3d 768. "[W]hile the [s]tate may have a

number of different theories as to why the evidence should not be suppressed, in order to preserve its arguments for appeal, the [s]tate must have alerted the district court as to which theories it was relying on in support of its argument in order to allow the district court to make a ruling thereon." *Id.*

**{17}** Here, the State points to the prosecutor's remark made during the motion hearing, as the time and place the issue was preserved. The prosecutor stated:

> The officer himself, on this particular day in January, when he approached the vehicle and smelled the odor of marijuana, it's the State's position that it would rise to reasonable suspicion. Then, in addition to that, when the officer sees—in plain view—marijuana, that would be enough for, in [sic] the State's position, probable cause.

**{18}** A review of the record shows this statement, made in the final minutes of the State's argument, was the only time the State mentioned the words "plain view."

**{19}** The State's mere mention of "plain view" did not invoke a ruling by the court. A review of the record demonstrates the district court's oral findings were based only on the State's proffered theory that Defendant's consent was voluntary. Additionally, Defendant was not fairly apprised of this argument thereby allowing him an opportunity to address it. We hold that this issue was not properly preserved for appeal, and thus decline to review it. *See State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 ("We generally do not consider issues on appeal that are not preserved below." (internal quotation marks and citation omitted)).

**CONCLUSION**

**{20}** Based on the foregoing, we affirm the district court's order granting Defendant's motion to suppress.

**{21}** **IT IS SO ORDERED.**

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JACQUELINE R. MEDINA, Judge**